**Troy A. BOWLEY, Appellant,**

**v.**

**The STATE of Texas.**

**No. PD–0914–09.**

Court of Criminal Appeals of Texas.

May 5, 2010.

---

Donnell W. Yandell, Lubbock, for appellant.

Jeffrey S. Ford, Asst. Dist. Atty., Lubbock, Jeffrey L. Van Horn, State's Atty., Austin, for state.

## *OPINION*

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, HERVEY, and COCHRAN, JJ., joined.

At trial, the judge refused to give an instruction to disregard after sustaining Bowley's objection to the prosecutor's question about plea negotiations. The Seventh Court of Appeals concluded that the judge erred by not giving the instruction and reversed.[1] We hold that no instruction was required because Bowley's testimony opened the door to the prosecutor's question. We therefore reverse the court of appeals's judgment.

### Facts

A jury convicted Bowley of DWI, enhanced by two prior DWI convictions to a third-degree felony.[2] Bowley qualified as an habitual felony offender,[3] and the jury

---

1. *Bowley v. State,* 280 S.W.3d 530, 534 (Tex. App.-Amarillo 2009).

2. Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2) (Vernon 2003).

3. Tex. Penal Code Ann. § 12.42(d) (Vernon 2003).

sentenced him to thirty years' imprisonment.

At the guilt phase of Bowley's trial, the prosecutor called Jimmy Isbell, an investigator with the Lubbock County District Attorney's Office, to testify about Bowley's two prior DWI convictions that the State used to enhance the current DWI charge to a felony. Testifying as a fingerprint expert, Isbell positively identified Bowley as the individual previously convicted of those offenses. On cross-examination by Bowley's counsel, Isbell testified that Bowley pled guilty to the previous offenses.

When Bowley testified in his own defense, his attorney questioned him about the judgments from his two prior DWI convictions. The following colloquy transpired:

Q: ... I'm going to show you State's Exhibit No. 4. And that's you; is that correct? This is one of your DWIs out of Terry County; is that fair to say?

A: Yes, sir.

. . .

Q: Okay. And ... did you plead to that or take that to trial?

A: I pled to that.

Q: Okay. Why did you plead to State's Exhibit No. 4?

A: Because I was guilty of it.

Q: Okay. Let's do it again with the State's Exhibit No. 5. This is a DWI and this is you, out of Hockley County; is that fair to say?

A: Yes, sir.

. . .

Q: Did you take this case to trial or not?

A: No, sir, I didn't.

Q: Okay. Why did you plead?

A: Because I was guilty, sir.

The prosecutor then questioned Bowley about his record:

Q: Okay. [Defense counsel] said that you pled guilty to all those up there because you were; is that right?

A: Yes, sir, that is correct.

Q: You're not pleading guilty here today because you're not guilty; is that right?

A: Right. That is correct.

Q: Could it be that it's because we couldn't agree on a plea agreement that you preferred?

[DEFENSE COUNSEL]: Judge, I guess I will have to object on that. That's—

THE COURT: Sustained.

[DEFENSE COUNSEL]: Judge, as well, let me go ahead and ask that this Court instruct the jury not to consider that in any type of deliberation, that it's simply just not a proper area for a trial, Judge.

THE COURT: No instruction will be given.

[DEFENSE COUNSEL]: Judge, I guess to finish that and perfect my objection, I will ask for a mistrial.

THE COURT: Denied.

On redirect, Bowley's counsel again questioned him about his prior guilty pleas. Bowley explained that he pled guilty in the prior cases because he knew he was intoxicated. Bowley's counsel did not question him about his reasons for pleading not guilty to the charge in this case.

### Court of Appeals

Bowley appealed, claiming that the trial judge abused his discretion by refusing his request for an instruction to disregard the prosecutor's reference to plea

negotiations.[4] Citing the principle that a court of appeals is free to uphold a trial judge's ruling under any theory of law applicable to the case,[5] the court of appeals stated that it was not restricted to State's reliance on Texas Rule of Evidence 410,[6] which involves the disclosure of "statements" made during plea negotiations.[7] The court of appeals then analyzed the issue under Rules 402 and 403, though it ultimately reversed the trial judge's ruling.[8] It held that the prosecutor's question "was improper because it was irrelevant, or, if minimally relevant, highly misleading and prejudicial."[9] The court of appeals observed, "Given the manner in which the question was posed, one could reasonably interpret it as disclosing that plea negotiations had occurred, that potential offers were made and rejected, and that [Bowley]'s desires presented the major obstacle to arriving at a bargain."[10] The court of appeals further noted that the "grave risk of undue prejudice and deception went unabated when the trial court withheld its instruction to disregard," and it opined that there is a "common sense" inference that those engaged in plea negotiations are guilty of the offense.[11] It thus concluded that the mention of plea negotiations was "a quick, improper way to negate appel-lant's defense."[12] Because of this concern, combined with the public policy favoring plea bargains and a danger that "holding the error harmless would invite the State to repeat this wrong and others," the court of appeals found harm and reversed the conviction.[13]

## Analysis

■■■ A trial judge's evidentiary rulings are reviewed under an abuse-of-discretion standard.[14] If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision.[15] We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling.[16]

■■■ By choosing to testify, a defendant puts his or her character for veracity (as opposed to moral character) in issue.[17] We have held that "[a] defendant who takes the witness stand may be cross-examined and impeached in the same manner as any other witness."[18] A defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other wit-

4. *Bowley,* 280 S.W.3d at 532.

5. *Id.* at 533 n. 4 (citing *Prystash v. State,* 3 S.W.3d 522, 527 (Tex.Crim.App.1999)).

6. *Id.*

7. TEX. R. EVID 410(4).

8. *Bowley,* 280 S.W.3d at 534.

9. *Id.* at 532–33.

10. *Id.* at 532.

11. *Id.* at 533.

12. *Id.*

13. *Id.* (citing *Prystash,* 3 S.W.3d at 527–28; *Smith v. State,* 898 S.W.2d 838, 843–44 (Tex. Crim.App.1995)).

14. *Id.*

15. *Prystash,* 3 S.W.3d at 527.

16. *Id.*

17. *Hammett v. State,* 713 S.W.2d 102, 105 (Tex.Crim.App.1986).

18. *Feldman v. State,* 71 S.W.3d 738, 755 (Tex. Crim.App.2002); *Cisneros v. State,* 692 S.W.2d 78, 83 (Tex.Crim.App.1985).

ness...."[19] And we have observed that a party who "opens the door" to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted.[20]

We hold that the court of appeals erred in holding that the prosecutor's question to Bowley referencing plea negotiations was improper. Bowley opened the door to the prosecutor's question on cross-examination by creating a circumstance in which the jury could infer that his not guilty plea was truthful. He did so on direct examination when he stated that he pled guilty in the previous cases "because [he] was guilty." Although Bowley's counsel did not take the ultimate logical step, the prosecutor clarified the underlying purpose of defense counsel's inquiry by asking, "You're not pleading guilty here today because you're not guilty, is that right?"[21] Bowley answered in the affirmative. By testifying that he pled guilty in the previous cases because he was guilty, then that he pled not guilty in this case because he was not guilty, Bowley invited the jury to consider his prior guilty pleas as evidence that he was innocent of the offense for which he was on trial.

■ As noted above, a party who opens the door to otherwise inadmissible evidence risks the adverse consequences of having it admitted. Evidence of plea negotiations is generally not relevant to proving the elements of an offense, and it might be prejudicial to a defendant. As stated in *Prystash v. State* and *Smith v. State*, allowing such evidence could chill plea negotiations between the parties.[22] But it was permissible for the prosecutor to cross-examine Bowley by questioning the circumstances surrounding his plea in this case to establish an alternate motive for pleading not guilty—that it was the result of failed plea negotiations.[23] To hold otherwise would allow a party to create a favorable inference while depriving the other party of the truth-finding mechanism of cross-examination. Thus, in this instance, even under the highly deferential abuse-of-discretion standard of review, no trial judge should have sustained Bowley's objection.

■ The court of appeals's conclusion that the question was subject to exclusion under Rule 403 because it was "highly misleading and prejudicial" and that there was a "grave risk" that the jury would make the "common sense" inference that because Bowley had negotiated for a plea, he had committed the crime, misses the mark.[24] The prosecutor's question sought

---

19. *Feldman*, 71 S.W.3d at 755; *Cisneros*, 692 S.W.2d at 83.

20. *Feldman*, 71 S.W.3d at 755–56.

21. *See, e.g., id.* at 756 (holding that the State's question asking appellant to explain his previous statement about being in trouble did not exceed the scope of the invitation appellant initially gave).

22. *See Prystash*, 3 S.W.3d at 527–28 (reaffirming that the defendant's introduction of a plea offer by the State as evidence of defendant's future dangerousness is excludable under Rule 403 and observing that public policy militated in favor of excluding plea offers); *Smith*, 898 S.W.2d at 843–44 (holding that evidence of a plea offer by the State may be relevant, but is substantially outweighed by the danger of both unfair prejudice and of misleading the jury).

23. *Cf. Ochoa v. State*, 481 S.W.2d 847, 849–50 (Tex.Crim.App.1972) (observing that where a witness makes blanket statements concerning his or her exemplary conduct such as having never been arrested, charged or convicted of any offense, or having never been "in trouble," or purports to detail his convictions leaving the impression there are no others, the State may refute such testimony despite the nature of the conviction used or its remoteness).

24. *See Bowley*, 280 S.W.3d at 533.

to elicit an alternate motive for Bowley's plea. The court of appeals commented that the question was "troubling" because it "struck at one of the major themes of [Bowley's] defense." [25] We disagree about the troublesome nature of the question. If the inference established by Bowley was a "major theme" of his defense, that fact militates in favor of allowing the State to challenge its soundness through cross-examination. The court of appeals further opined that the prosecutor should not have asked the question because he "possessed sufficient legitimate evidence to rebut the strategy and establish [Bowley's] guilt...." [26] And the dissent also focuses on the strength of the State's case. However, the focus here is the particular need to rebut the inference established by Bowley, as opposed to the sufficiency of the State's evidence. Second, an assessment of the State's case is pure speculation. Finally, even assuming that there was sufficient evidence for the State to establish Bowley's guilt without challenging this theme of his defense does not mean the State had to refrain from doing so. And, as stated above, it was permissible for the State to establish an alternate inference than Bowley's. We conclude that the court of appeals erred in holding that the question asked by the prosecutor was substantially more prejudicial than probative under the particular facts of this case.

For the foregoing reasons, the trial judge was not required to sustain Bowley's objection. Accordingly, no instruction to disregard was necessary.

**25.** *Id.*

**26.** *Id.*

**1.** *See* TEX. R. EVID 410(4) ("Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant

### Conclusion

The court of appeals erred in concluding that the trial judge was required to give an instruction to disregard. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ. joined.

JOHNSON, J., filed a dissenting opinion.

HOLCOMB, J., filed a dissenting opinion in which MEYERS, PRICE, and JOHNSON, JJ., joined.

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON and HOLCOMB, JJ., joined.

This case comes to us in such an odd posture that it is difficult for us to say anything of great jurisprudential significance. The trial judge sustained the appellant's general objection without indicating upon what legal basis he understood the appellant to be objecting. In his appellate brief, the appellant proceeded on the assumption that his objection had been predicated upon Rule 410(4) of the Texas Rules of Evidence, which prohibits the use by the State against a defendant of evidence of any "statement" the defendant might have made in the course of unfruitful plea negotiations.[1] Professors Goode, Wellborn and Sharlot tell us that the rule's prohibition is meant to extend even to a statement that would be relevant as im-

in the plea discussions: ... (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority, ... in a criminal case, that do not result in a plea of guilty or a plea or *nolo contendere* or that results in a plea, later withdrawn, of guilty or *nolo contendere*.").

peachment evidence.[2] The rule represents a policy judgment that even relevant evidence should be excluded in the interest of promoting "frank and free" plea negotiations.[3] Therefore, assuming the rule applies here, the prosecutor's question was objectionable *even if* the appellant's line of questioning otherwise "opened the door" to admission of any other relevant impeachment evidence.

In its reply brief on direct appeal, however, the State argued that the prosecutor's question was not designed necessarily to elicit evidence of any specific "statement" that the appellant may have made during plea negotiations. It is true that the prosecutor's question ("Could it be that [your not guilty plea in this case occurred] because we couldn't agree on a plea agreement that you preferred?") did not focus on any *particular* statement the appellant may have made during plea discussions. From this the State argued on appeal that the limitations of Rule 410(4) on its ability to develop otherwise relevant impeachment testimony against the appellant ought not to apply.

I am dubious. By focusing on what the parties could not *agree* to, the prosecutor's question does indeed steer clear of any express elicitation of a unilateral statement on the appellant's part. But because a plea agreement ordinarily entails an offer by the prosecutor and an acceptance by the defendant, any evidence of a failure to mutually agree on a plea bargain necessarily implies a communication of *some* kind on the defendant's part—a "statement," if you will—that he did not accept the State's offer. Certainly it communicates that the appellant entertained the option of entering a guilty plea. To allow the prosecutor's question here hardly serves to foster the "frank and free discussions between the parties" that Rule 410's near-absolute prohibition is designed to preserve.[4]

In any event, the court of appeals managed to avoid addressing this issue altogether.[5] Instead, the court of appeals held that the trial judge's ruling *might* properly have been predicated upon Rule 403's authorization of trial courts to exclude even relevant evidence "if its probative value is

**2.** *See* Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, 1 TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 410.2 (3rd ed. 2002), at 348 ("the pleas and related statements mentioned in Rule 410 are inadmissible in subsequent ... criminal litigation, whether offered either as substantive evidence against the defendant who made the plea or participated in the plea discussions or to impeach him.").

**3.** *Id.,* § 410.3, at 352.

**4.** The majority proceeds upon a theory that the appellant "opened the door" to the use of his plea proceedings to impeach him in this case, to rectify the misapprehension he implanted with the jury that he always pleads guilty when he is guilty (and, by implication, not guilty when he is not). I am not unmindful of the perceived unfairness to the State here. But, for policy reasons, Rule 410 does not permit such impeachment. Rule 410 *does*

contain an exception that would allow for the admission against a defendant of a statement made during unsuccessful plea proceedings in the interest of "fairness," to complete the picture when the defendant himself has already introduced evidence of "another statement" made during those plea proceedings. But this optional-completeness exception is expressly limited to statements made during "the same plea or plea discussions[.]" The appellant's testimony about his *prior* guilty pleas cannot serve under this specific provision of Rule 410 to "open the door" to admission of statements he might have made during plea negotiations pertaining to the instant offense. Perhaps in "fairness" it should, but if the Court believes this represents a lamentable gap in the rule and a windfall for the appellant, we should entrust that perception to our Rules Committee.

**5.** *Bowley v. State,* 280 S.W.3d 530, 533 n. 4 (Tex.App.-Amarillo 2009).

substantially outweighed by the danger of unfair prejudice," etc., and held that the appellant's objection was properly sustained on that basis.[6] For my part, I seriously doubt that this was the rule that either the appellant or the trial judge had in mind—although on the present record it is, of course, impossible to know. The court of appeals's diversion has nevertheless embroiled this Court in a dispute over the proper application of what is probably not even the relevant evidentiary rule—certainly not the rule the parties briefed below.

Weighing in on this diversionary issue nevertheless (since it is, after all, the issue the court of appeals decided), I must reject the majority's conclusion that the trial court would have abused its discretion had it *actually* predicated its ruling on Rule 403. Reviewing courts afford trial courts wide latitude in their exercise of discretion in this context. A reviewing court should not second guess a trial court's ruling under Rule 403 and call it an abuse of discretion as long as it can be said that the ruling was within the so-called zone of reasonable disagreement.[7] When a trial court properly exercises its broad discretion to rule that a particular item of evidence, while perhaps relevant as impeachment, is nevertheless substantially more prejudicial than probative, and excludes it for that reason, it invariably abuses its discretion if it then fails to give a requested instruction to the jury to disregard that evidence if the jury has inadvertently been exposed to it before it could be excluded. This will always be the case when the question itself is objectionable. For reasons expressed in Judge Holcomb's dissenting opinion, I agree that the trial court's Rule 403 ruling in this case (if that is what it *was,* which I strongly doubt) was not outside the zone of reasonable disagreement, and therefore not an abuse of discretion. That being the case, the trial court had *no* discretion, and therefore plainly erred, to refuse the appellant's request to instruct the jury to disregard the prosecutor's question.

But even if the majority were right with respect to the Rule 403 issue, it grievously errs simply to affirm the judgment of the trial court without further ado. If the court of appeals was wrong about the propriety of the trial court's ruling as a matter of Rule 403, the question remains whether the trial court's (probable) actual ruling under Rule 410(a) was within its discretion. Because the court of appeals has never resolved this issue, the correct disposition at this juncture would be to remand the cause to the court of appeals so that it may do so. I must therefore dissent on the additional basis that the Court does not remand the cause for further proceedings in the court of appeals.

Ultimately, I rue that we ever, in our capacity as a discretionary review court, should have allowed ourselves to get embroiled in a case like this in the first place.

JOHNSON, J., filed a dissenting opinion.

In this case, the state used two prior convictions for driving while intoxicated (DWI) to increase the degree of the offense to a felony, then two more convictions for felony DWI to enhance the range of punishment to that of a first-degree felony. This is prohibited by our case law.

---

**6.** *See* Tex.R. Evid 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

**7.** *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (opinion on reh'g).

In *Phifer v. State,* 787 S.W.2d 395 (Tex.Crim.App.1990), this Court determined that a felony DWI could be enhanced under Chapter 12, Subchapter D, of the Penal Code and that a felony DWI could be used to enhance the range of punishment of a felony under Subchapter D, but it could not be used to do so if the indictment alleged the offense of felony DWI.

Additionally, special enhancement provisions for a primary offense have long been held to bar enhancement under general statutes only for prior offenses that could be used within the special provisions. *See Rawlings v. State,* 602 S.W.2d 268 (Tex.Cr.App.1980); *Heredia v. State,* 468 S.W.2d 833 (Tex.Cr.App. 1971); *Tomlin v. State,* 170 Tex.Crim. 108, 338 S.W.2d 735 (1960); *Edwards v. State,* 166 Tex.Crim. 301, 313 S.W.2d 618 (1958). Applying that principle to this cause would preclude use of prior felony DWI convictions, but not other felony convictions, to enhance under Chapter 12.

*Phifer,* 787 S.W.2d at 396.

I understand this concept to be set out in Penal Code Section 49.09(g): "A conviction may be used for purposes of enhancement under this section or enhancement under Subchapter D, Chapter 12, but not under both this section and Subchapter D." During the late 1980s, various courts of appeals decided cases in which the issue was whether felony DWI convictions could be used to enhance a range of punishment under Subchapter D, with mixed results. *See, e.g., Jones v. State,* 762 S.W.2d 330 (Tex.App.-Austin 1988) (can enhance DWI under Subchapter D); *Childress v. State,* 756 S.W.2d 11 (Tex.App.-Houston [1st Dist.] 1988 )(cannot enhance DWI under Subchapter D). *Phifer* settled the question, deciding that a felony DWI conviction could be enhanced under Subchapter D, but not with another DWI conviction.

Section 49.09(g) first appears in the Penal Code after the 1995 session of the legislature and may be a validation of *Phifer,* even if poorly phrased.

Section 49.09(g) is clear as to permitting the use of felony DWI to enhance a non-DWI felony, but not so clear as to using different prior DWI convictions to enhance the offense under both Chapter 49 and Subchapter D. In *Phillips v. State,* 992 S.W.2d 491 (Tex.Crim.App.1999), we interpreted the language of Section 49.09(g)(49.09(f) at the time of *Phillips* ) to allow the use of prior DWI convictions to both raise the offense to a felony and enhance it under Subchapter 12, the precise use prohibited by *Phifer.* *Phillips* did not overrule *Phifer,* thus *Phifer* remains good law and stands in stark contradiction of *Phillips.* Under *Phifer,* the indictment in this case was subject to being quashed. Perhaps the legislature would care to revisit Section 49.09(g) and clarify its intent.

I respectfully dissent.

HOLCOMB, J., filed a dissenting opinion, in which MEYERS, PRICE, and JOHNSON, JJ., joined.

I respectfully dissent. I think the majority has misanalyzed this case and reached the wrong result. Before I explain my view in detail, allow me to first review the relevant facts.

On November 27, 2007, a Lubbock County grand jury returned an indictment charging Troy A. Bowley with felony driving while intoxicated (DWI). *See* Tex. Pen.Code § 49.04. For purposes of offense enhancement, the indictment alleged that Bowley had two prior DWI convictions, one in Hockley County and one in Terry County. *See* Tex. Pen.Code § 49.09(b)(2). For purposes of punishment enhancement, the indictment alleged that Bowley had two prior felony DWI convictions in Lubbock County. *See* Tex. Pen.Code 12.42(d).

On April 14, 2008, the State brought Bowley to trial before a petit jury. At the guilt stage of that trial, the State presented three witnesses and several exhibits, and Bowley presented one witness (himself).

The State's first witness, Lubbock Police Officer Brooks Jennings, testified that on the early morning of October 14, 2007, as he patrolled southeastern Lubbock in his police vehicle, he observed Bowley, who was driving a sport utility vehicle, commit a minor traffic offense. Jennings activated his police vehicle's overhead lights and pulled Bowley over into a motel parking lot. Jennings exited his vehicle, approached Bowley's vehicle, and asked Bowley for his driver's license and proof of insurance. Bowley produced a Texas identification card but no proof of insurance. Jennings noticed that Bowley "fumbled" with his wallet while trying to find his identification card. Jennings also noticed that Bowley's eyes were "bloodshot and glassy" and that he smelled of alcohol. Jennings asked Bowley to step out of his vehicle, and Bowley did so. Jennings then asked Bowley whether he would perform some field sobriety tests, and Bowley agreed to do so. Jennings then administered three such field tests to Bowley—the horizontal gaze nystagmus, the walk-and-turn, and the one-leg-stand. Bowley performed poorly on each of the tests. Jennings then arrested Bowley for driving while intoxicated.

Jennings testified further that he had had extensive training and experience with the field sobriety tests mentioned. Finally, he testified that on the night in question, his police vehicle had been equipped with a video camera and that that camera had recorded his encounter with Bowley.

During the latter part of Jennings' testimony, the State played for the jury the video of Jennings' encounter with Bowley. That video (State's Exhibit One) showed that Bowley staggered repeatedly while performing the walk-and-turn test and that, despite repeated attempts, he could not perform the one-leg-stand test satisfactorily.[1]

The State's second witness, Lubbock Police Officer James Altgelt, testified that he had had extensive training and experience with field sobriety tests, and that such tests were "designed so that any normal person, provided that they're sober, [is] able to accomplish" them satisfactorily. Altgelt testified further that he had had extensive professional training in the recognition of intoxication and that, from his viewing of State's Exhibit One, Bowley's performance of the walk-and-turn and one-leg-stand field sobriety tests was "clearly consistent with intoxication."

The State's third witness, Jimmy Isbell, testified that he had been professionally trained in fingerprint identification and comparison, and that the fingerprints in State's Exhibits Four and Five matched fingerprints that he took from Bowley shortly before trial. (State's Exhibits Four and Five were certified copies of judgments showing that Bowley had been convicted of DWI in Hockley County in 1988 and in Terry County in 1991.)

Bowley, on direct examination, testified that on the night in question, he had the normal use of his mental and physical faculties and was not intoxicated. His testimony continued:

Q: Troy, I'm going to show you State's Exhibit No. 4. And that's you [named in that judgment]; is that correct? This is

---

1. The video was shot from a distance and, therefore, was unable to show the movements of Bowley's eyes during the horizontal gaze nystagmus field sobriety test.

one of your DWI's out of Terry County; is that fair to say?

A: Yes, sir.

\* \* \*

Q: Okay. And, Troy, did you plead to that or take that to trial?

A: I pled to that.

Q: Okay. Why did you plead to State's Exhibit No. 4?

A: Because I was guilty of it.

Q: Okay. Let's do it again with State's Exhibit No. 5. This is [another judgment for] DWI, and this is you, out of Hockley County; is that fair to say?

A: Yes, sir.

\* \* \*

Q: Did you take this case to trial or not?

A: No, sir, I didn't.

Q: Okay. Why did you plead?

A: Because I was guilty, sir.

During the State's cross-examination of Bowley, the following occurred:

Q: Okay. [Defense counsel] said that you pled guilty to all of those [DWI's] up there [in State's Exhibits Nos. 4 and 5] because you were; is that right?

A: Yes, sir, that is correct.

Q: You're not pleading guilty here today because you're not guilty; is that right?

A: Right. That is correct.

Q: Could it be that it's because we couldn't agree on a plea agreement that you preferred?

DEFENSE COUNSEL: Judge, I guess I will have to object on that. That's—

THE COURT: Sustained.

DEFENSE COUNSEL: Judge, as well, let me go ahead and ask that this court instruct the jury not to consider that in any type of deliberation, that it's simply just not a proper area for a trial, Judge.

THE COURT: No instruction will be given.

DEFENSE COUNSEL: Judge, I guess to finish that and protect my objection, I will ask for a mistrial.

THE COURT: Denied.

The majority now holds that the State's question referring to plea negotiations was proper because "Bowley opened the door to [it] on cross-examination by creating a circumstance in which the jury could infer that his not guilty plea was truthful." *Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim.App.2010). However, even if the majority is correct that Bowley "opened the door" to the State's question, the trial court still could have reasonably determined that the State's question was objectionable because it asked for evidence that was inadmissible under Texas Rule of Evidence 403. Evidence that may otherwise be admissible because a party opened the door to it may nevertheless be inadmissible under Rule 403. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex.Crim.App.2007).

Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." "Probative value," as that phrase is used in the rule, refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). "Unfair prejudice" refers to a tendency to suggest decision on an improper basis. *Ibid.*

"Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule." *Winegarner v. State,* 235 S.W.3d at 791.

Given the nature of the evidence sought by the State's question—an admission by Bowley that he pled "not guilty" because he and the State could not agree on a plea bargain—the trial court could have reasonably concluded that that evidence was insufficiently probative when measured against the danger of unfair prejudice. Why do I think that? First, the trial court could have reasonably concluded that, in the context of that particular trial, the inherent probative force of such an admission by Bowley would have been modest while the State's need for it was close to non-existent.[2] Second, the trial court could have reasonably concluded that the danger of unfair prejudice posed by such an admission was great. As the court of appeals noted, "mention of plea negotiations having occurred could mistakenly lead a juror to conclude that [Bowley] believed himself guilty since an innocent person would not contemplate admitting guilt." *Bowley v. State,* 280 S.W.3d 530, 532 (Tex.App.-Amarillo 2009). The potential impact upon jurors of the mention of plea negotiations cannot be overstated.

As an appellate court judge now reviewing a cold record, I cannot say that the trial court's decision that the State's question was objectionable was clearly outside the zone of reasonable disagreement. Had I been in the trial court's shoes, I might have made a different decision, but that is not the standard of appellate review. Furthermore, in my humble opinion, the court of appeals was correct in concluding that "the grave risk of undue prejudice went unabated when the trial court withheld its instruction to disregard" the State's reference to plea negotiations. *Id.* at 533.

I would affirm the judgment of the court of appeals. Because the majority does not do so, I respectfully dissent.

---

**2.** Think for a moment about the strength of the State's case against Bowley. The State had the clear and quite damning testimony of Officers Jennings and Altgelt, recounted above, together with the video of Jennings' encounter with Bowley on the night in question. I have viewed that video, and I do not exaggerate when I write that it was most likely devastating to Bowley's defense.