# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00499-CR

**James Perkins, III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-10-301758, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant James Perkins, III was indicted for aggravated robbery with a deadly weapon. *See* Tex. Penal Code § 29.03. After voir dire was completed, Perkins pled guilty to the charge, and the trial court directed the jury to enter a guilty verdict. The jury did so and, following the presentation of evidence in the punishment phase, sentenced Perkins to thirty-five years in prison. The trial court signed a judgment of conviction finding Perkins guilty, sentencing him to thirty-five years, and making a deadly-weapon finding. On appeal, Perkins contends that (1) the trial court erred in refusing to admit his co-conspirator's out-of-court statement and (2) the deadly weapon finding should be deleted. We affirm the trial court's judgment of conviction.

### Factual Summary

Perkins and two other men, Antonio Espitia and Paul Rios, flagged down the complainant, asked to use his phone, and asked if he wanted to buy marihuana. When the complainant

declined and tried to leave, appellant pushed him down an embankment and struggled with him. One of the other men pulled a pistol and shot into the air, so the complainant gave the robbers his wallet and told them his PIN number. The complainant testified that Perkins and Rios handed the gun back and forth during the robbery and that Perkins pointed it at the complainant's head and chest. After Perkins returned from an unsuccessful attempt to use the complainant's debit card, he and Rios continued to "mess[] with" the complainant, calling him names and telling him to perform oral sex on Perkins. The complainant called Perkins a homosexual slur, and Perkins punched the complainant in the face. Eventually, the assailants started talking about how to leave, and the complainant testified that they said "two of them would run off while one stayed to shoot me or something." The complainant thought that Perkins had the gun at that point. The complainant was afraid that the assailants would shoot him in the head or chest, so he suggested that they shoot him in the leg, which would allow them to get away. They responded that "they couldn't do that," so the complainant turned and began to run away through a drainage tunnel. As he ran, he was shot in the buttocks. He was asked "who had the gun at the point when you turned and ran," and he answered, "The last person I saw with the gun was [Perkins]." Perkins's niece testified that after the robbery, Perkins told her about the robbery and said that Rios had shot the complainant.

## Co-Conspirator's Statement

During the punishment phase, Perkins attempted to admit into evidence the statement Espitia gave to the police, in which Espitia said that he was involved in the crime, that Rios said he was going to shoot the complainant in the head and aimed the gun at the complainant, and that Espitia actually reached out and struck Rios's arm, causing the shot Rios fired to strike the

2

complainant in the buttocks as he turned and ran. Perkins argued that the statement should be admitted under the statement-against-interest exception to the hearsay rule, *see* Tex. R. Evid. 803(24), or, alternatively, because the State had opened the door by giving the false impression that Perkins was the shooter. The trial court denied Perkins's request, ruling that the statement was not a blame-sharing statement but a blame-shifting statement. The court cautioned the State not to argue that Perkins "was the last one with the gun in his hands" because it "leaves an impression that he was the one that shot." Outside the jury's presence, the trial court heard testimony by the police officer who took Espitia's statement, who agreed with the court that Espitia was "placing the blame on" Perkins and Rios. The trial court ruled again that Espitia's statement was not admissible as a blame-sharing statement and noted that the same evidence had already come in through the testimony of Perkins's niece, that the complainant testified that he did not know who had shot him, and that Perkins was opposed to admitting his own statement, in which he made the same contention.

We will not reverse a trial court's rulings on the admissibility of evidence absent an abuse of discretion. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). Although statements that are "directly against the declarant's interest and collateral 'blame-sharing' statements may be admissible" under rule 803(24) if properly corroborated, "'[b]lame-shifting' statements that minimize the speaker's culpability are not, absent extraordinary circumstances." *Walter v. State*, 267 S.W.3d 883, 896 (Tex. Crim. App. 2008). It is the trial court's job to "parse a generally self-inculpatory narrative and weed out those specific factual statements that are self-exculpatory or shift blame to another," and "when the declarant minimizes his culpability and shifts major blame to a cohort, the self-serving aspect of the statement generally outweighs the self-inculpatory aspect." *Id*. at 897, 899.

3

Although Espitia did admit to some involvement in the robbery, he told the officer that he "was there to back up" Perkins and Rios so "they didn't get hurt," that "he just stood by" and "did not physically participate," that Perkins and Rios were the physical assailants, and that Espitia even attempted to stop Rios from shooting the complainant. Thus, Espitia's statement minimized his culpability in the seriousness of the offense, shifting the major blame to Perkins and Rios. *See id.* at 899. We cannot hold that the trial court abused its discretion in determining that Espitia's statement was more a blame-shifting statement than a blame-sharing statement. *See id.* at 896.

Nor has Perkins shown that the trial court abused its discretion in refusing to admit the statement under rule 107 of the rule of optional completeness, *see* Tex. R. Evid. 107, because the State "opened the door" by presenting the complainant's testimony about last seeing the gun in Perkins's hands. We agree with the State's analysis of this argument—Perkins was not seeking to complete the jury's picture of the assault but to rebut an inference that the jury might have drawn from the complainant's testimony that Perkins was the last person he saw holding the gun before he turned to run and was shot, and Perkins did not question the complainant about how long it was before he was shot that he noticed Perkins holding the gun. And, we note that the same evidence was introduced through Perkins's niece's testimony. We overrule Perkins's first issue on appeal.

**Deadly-Weapon Finding**

In his second issue, Perkins argues that the jury did not make an express, affirmative finding of a deadly weapon and that the deadly-weapon finding in the trial court's judgment of conviction must therefore be deleted. We disagree.

4

The indictment alleged that Perkins, while in the course of committing theft, intentionally or knowingly threatened the complainant or placed the complainant in fear of imminent bodily injury or death and that Perkins used a firearm to commit the offense. The indictment contains a separate paragraph alleging that "a deadly weapon, to-wit: a firearm" was used or exhibited during the commission of the offense and that Perkins used or exhibited the deadly weapon or was a party to the offense and knew the deadly weapon would be used or exhibited. Perkins decided to plead guilty, the trial court asked him if he understood the charges against him, and he said he did. In the jury's presence, the indictment was read, and Perkins stated that he pled guilty to "these allegations." Perkins also signed a guilty plea stating that he was guilty of aggravated robbery with a deadly weapon, admitting that he had committed the offense "as alleged in the indictment." The jury charge stated that Perkins had pled guilty to aggravated robbery with a deadly weapon, and following the court's instructions, the jury found Perkins guilty of aggravated robbery with a deadly weapon. After the jury assessed punishment at thirty-five years imprisonment, the trial court signed a judgment of conviction stating that Perkins was convicted of aggravated robbery with a deadly weapon, to-wit: a firearm, including a specific finding that Perkins had used a deadly weapon in the form of a firearm.

When a jury is the fact-finder, a trial court may only enter a deadly-weapon finding if: (1) in the case of a jury charge asking whether the defendant is guilty "as charged in the indictment," the deadly weapon or firearm was specifically pled as such in the indictment; (2) the weapon pled is per se a deadly weapon or firearm; or (3) the jury has answered a special issue in the affirmative. *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Perkins notes that neither the jury

charge on guilt/innocence nor the charge on punishment referred to the indictment; that the guilt/innocence charge does not include an application paragraph; and that the punishment charge does not "contain a deadly weapon affirmative finding issue" or refer in any way to a deadly weapon. However, although the jury charge does not refer to the indictment or mention the use of a firearm, the charge states that Perkins had pled guilty to aggravated robbery with a deadly weapon. In other words, Perkins pled guilty to, and the jury found him guilty of, an offense that explicitly contains a finding that a deadly weapon was used in its commission. We overrule Perkins's second issue.[1]

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Rose

Affirmed

Filed: November 26, 2013

Do Not Publish

_____

[1] Perkins further notes that the second paragraph of the indictment alleged that a deadly weapon "was used or exhibited during the commission of the aforesaid offense, and that [Perkins] used or exhibited the said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited." Perkins argues that because the indictment included such party-liability language, the deadly-weapon finding should be deleted because it was not possible to tell whether he was convicted as the primary actor or as a party. However, Perkins pled guilty to aggravated robbery with a deadly weapon and thus, whether he intended to plead as a party or the primary actor, he pled guilty to the question of whether a deadly weapon was used. *See Sarmiento v. State*, 93 S.W.3d 566, 568 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("when a defendant is convicted as a party, an affirmative finding of a deadly weapon must be supported either by a specific finding that (1) the defendant himself used or exhibited a deadly weapon or (2) the defendant knew a deadly weapon would be used or exhibited in the commission of the offense").

6