# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00837-CR

**Shaun David Samuelson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT NO. D-1-DC-12-904061, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Shaun David Samuelson guilty of the capital murder of his mother, and the trial court assessed a punishment of life in prison without parole. *See* Tex. Penal Code §§ 12.31, 19.03, 36.06. Appellant asserts that the trial court erred by overruling his motion to suppress his videotaped statement to police because, he alleges, the police continued to question him despite his unequivocal invocation of his right to counsel. He also contends that the trial court erred by overruling his objection to the portion of a police officer's in-car video showing the victim accusing appellant of assaulting her, which he contends violated both his Sixth Amendment right to confrontation and the hearsay exclusionary rule. We will affirm the judgment.

## BACKGROUND

Austin police officers and emergency medical technicians responded to a 911 call from Virginia Samuelson, who claimed she had been beaten by her son, appellant. They met her at

a gas station. A police officer testified that he asked Mrs. Samuelson questions about the assault to determine where appellant might be going and gave way to the EMTs, who testified that they asked her questions regarding her injuries. Police and EMTs testified that Mrs. Samuelson had swelling spots on her face and a busted lip. They testified that she seemed nervous and shaken. The police officer went to his car to request that Hays County officers check to see if appellant had gone home.

The EMTs testified that they persuaded Mrs. Samuelson to let them take her to the hospital for further examination, and she got onto their gurney near her car and the police car. Before they could move her to the ambulance, however, they and the police officer heard screeching tires and an accelerating engine. They saw a large black pickup heading straight for them. One of the EMTs testified that he made eye contact with the driver who, he said, "had both hands on the steering wheel, was staring straight ahead and accelerating." The police officer stepped away from his patrol car and the EMTs attempted to pull the gurney away with them, but it would not move. The pickup slammed into the gurney and the adjacent vehicles, then left the premises.

The police officer testified that he followed on foot with his gun drawn. He said that the pickup stopped, and appellant got out, shouting "Shoot me, shoot me." The EMS gurney was trapped underneath the front of the pickup. The EMTs testified that they found Mrs. Samuelson on the ground not breathing, without a pulse, and clearly dead. The medical examiner testified regarding her massive injuries including many broken ribs, a torn aorta, a pulpified liver, and severely broken extremities.

## DISCUSSION

**The trial court did not err by overruling the motion to suppress.**

Appellant contends that the trial court should have suppressed the portion of a videotape after his "unequivocal invocation" of his right to counsel. The following exchange occurred over an hour into the interview at the police station:

> [Detective Christopher Smyth]: So were you trying to hit the police officers?
>
> [Appellant]: Not specifically, no.
>
> [Det. Smyth]: Okay. Were you trying to hit the EMS people?
>
> [Appellant]: No.
>
> [Det. Smyth]: Okay. Were you trying to hit your mom?
>
> [Appellant]: **I probably shouldn't say any more without a lawyer** but yes I was trying to hit my mom. I felt nothing but such great rage toward her at that point that. I don't know what else I can say. It's all. You guys understand people. You're police detectives, you study people. You guys know what happened.
>
> [Detective Will White]: Well, you gotta understand, and I know you said earlier that, um, we have cameras, there were people all over there. That doesn't mean we don't like to let people give their side of things, um, cause it's important, that you have your say.
>
> [Appellant]: My side of things is basically that I just, is that I just hate her.

(Emphasis added.) Appellant contends that the bolded statement was an unequivocal invocation of his right to counsel and that the interview should have stopped then. He contends that the trial court should have excluded all portions of the videotape following that statement.

3

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). We defer almost completely to the trial court's determinations of historical fact, especially if they are based on assessments of witness credibility and demeanor. *Crain*, 315 S.W.3d at 48. We afford the same deference to trial court rulings on the application of law to pure questions of fact and to mixed questions of law and fact that depend on evaluation of witness credibility and demeanor. *Id.* For mixed questions of law and fact that do not depend on evaluation of witness credibility and demeanor, however, we review the trial court's rulings de novo. *Id.*

When a suspect asks for a lawyer, interrogation must stop until counsel has been provided or the suspect initiates further communication with the police. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010). To trigger law enforcement's duty to stop the interrogation, a suspect's request for counsel must be clear, and the police are not required to attempt to clarify ambiguous remarks. *Id.* Whether a statement referring to a lawyer constitutes a clear request for counsel depends on the statement itself and the totality of the circumstances surrounding the statement. *Id.* The test is objective: whether the suspect "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* The Court of Criminal Appeals cited a Supreme Court holding that the statement by the defendant, "Maybe I should talk to a lawyer," did not constitute an unambiguous or clear request for counsel. *See id.* (citing *Davis v. United States*, 512 U.S. 452, 462 (1994)). The Court of Criminal Appeals held that the statement by the defendant, "I should have an

4

attorney," was not a clear request for an attorney because the defendant kept talking and asked the detectives why he should help them. *Id.*

Appellant's statement that he "probably shouldn't say any more without a lawyer" is similarly not a request for counsel. It is a statement of opinion regarding the wisdom of continuing to talk. Appellant made the observation, then continued to talk without prompting from the police. The police did not violate appellant's constitutional rights, and the trial court did not err by overruling appellant's motion to suppress.

**The trial court did not err by overruling appellant's objection to the in-car video.**

Appellant objected to the admission of a video recording from a patrol car showing Mrs. Samuelson talking to police about appellant's assault that led her to call for help. Appellant contends that allowing the jury to hear her statements violated his Sixth Amendment right to confront witnesses against him as well as the hearsay exclusion.

We review a ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 38 (Tex. Crim. App. 2009). Under the abuse of discretion standard, we affirm the trial court's ruling under any applicable theory of law. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling. *Id.*

The trial court admitted the statements under the excited-utterance exception to the hearsay exclusion. *See* Tex. R. Evid. 803(2). This rule permits the admission of out-of-court

statements relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition. *Id.* Appellant argues that the statements were not within this exception because they were made more than twenty minutes after his initial assault, that any excitement had dissipated, and that Mrs. Samuelson was calm and collected by that point. The trial court heard the previous 911 call in which Mrs. Samuelson stated that her son became enraged when she would not give him money, would not let go of her car, and, after she tried to pepper spray him, hit her repeatedly through the car window. The judge also heard testimony from a police officer and two EMTs who described Mrs. Samuelson as shaken, nervous, distraught, trembling, scared, and very frightened. The trial court also saw the video of the statement. Despite appellant's contrary assertion, we cannot say that the trial court abused its discretion by determining that Mrs. Samuelson was still "under the stress of excitement caused by the event or condition." *See* Tex. R. Evid. 803(2). The trial court did not abuse its discretion by admitting the evidence under the excited-utterance exception to the hearsay-exclusion rule.

As for appellant's constitutional right to confront his mother in court, appellant lost that right when he killed her. The doctrine of forfeiture by wrongdoing permits the introduction of statements from a witness who has been "detained" or "kept away" by the "means or procurement" of the defendant.[1] *Giles v. California*, 554 U.S. 353, 359-60 (2008). Equity bars a defendant from complaining that he is unable to confront a witness whom he has intentionally made unavailable. *Id.*; *cf. Crawford v. Washington*, 541 U.S. 36, 62 (2004) ("accepting" the rule of forfeiture by

---

[1] Although the trial court did not expressly rely on the doctrine of forfeiture by wrongdoing, we may explore whether it supports the trial court's ruling. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).

wrongdoing). Appellant told police that he saw his mother talking to police and realized that he was never going to see the light of day again, at which point he decided to kill her and did so.[2] While he may have given additional reasons for killing his mother, the record supports a conclusion that he at least in part killed her to keep her from talking to police about the assault and testifying at trial.

**Any error was harmless.**

Even if the trial court's admission of the challenged statements could be found erroneous, we conclude that the record renders any of the asserted errors harmless. *See* Tex. R. App. P. 44.2(a). A court of appeals must reverse for any preserved error subject to harmless-error review that violated an appellant's constitutional rights unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).

The presence of overwhelming untainted evidence favoring the judgment can be a factor in determining that constitutional error was harmless. *Harrington v. California*, 395 U.S. 250, 254 (1969). *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). We do not focus on the propriety of the outcome, but calculate, to the degree possible, the probable impact of the error on the conviction in light of the existence of other evidence. *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We ask if there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion. *Id.* We take into account any and every circumstance apparent in the record that logically informs an appellate

---

[2] He made this statement well before he commented that he probably should not say any more without a lawyer.

determination whether, beyond a reasonable doubt, the error did not contribute to the conviction or punishment. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

Even without considering the disputed evidence, there is overwhelming evidence to support the conviction of appellant for murdering his mother while she was reporting his earlier assault. EMTs and a police officer testified that they saw appellant drive his truck straight at his mother, killing her. Appellant himself told police that he did it because she was talking to police and was going to send him to prison, which supports finding that he killed her in retaliation for her report. This evidence is more than sufficient to support the verdict. Although the substance of Mrs. Samuelson's statement to police added specific details supporting the retaliation charge, the conviction is firmly supported without it through appellant's own statements. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (no harm from admitting challenged evidence if the admitted evidence is generally cumulative of other evidence introduced in the case).

Appellant contends that he himself made many inflammatory remarks about his mother during the objected-to portions of his interview and that his mother's statements provided unfairly prejudicial details. He also points to statements he made that indicated that perhaps he had different goals in mind when he drove his large truck over his mother on the gurney, like retaliation for her perceived wrongs to him and merely causing her to suffer. These remarks and details provided context, but did not invite the jury to stretch other evidence to wrongly find the elements of retaliation and murder. If anything, they might have enticed the jury to conclude that his actions were not in retaliation for her report to police or that he did not intend to kill her—alternate

conclusions that would have actually favored appellant. The unchallenged evidence supporting the elements of the offense of capital murder was overwhelming.

We conclude beyond a reasonable doubt that the admission of the evidence that appellant contends should have been excluded did not contribute to his conviction or his sentence and did not otherwise affect his substantial rights.[3] *See* Tex. R. App. P. 44.2(a), (b).

**CONCLUSION**

We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 21, 2014

Do Not Publish

---

[3] Because appellant was convicted of capital murder, but the State did not seek the death penalty, the trial court had no choice but to assess a punishment of life in prison without parole. *See* Tex. Penal Code § 12.31(a).

9