# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00183-CR

---

Herbert Wayne Moten,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
13th District Court of Navarro County, Texas
Judge James E. Lagomarsino, presiding
Trial Court Cause No. D42845-CR

---

JUSTICE SMITH delivered the opinion of the Court.

## OPINION

Herbert Wayne Moten appeals his conviction for aggravated assault with a deadly weapon. After finding him guilty, the jury assessed punishment at forty years of imprisonment in the Texas Department of Criminal Justice, Institutional Division. In his sole issue, Moten contends the trial court erred in admitting evidence of phone calls he made while in jail. We affirm.

## BACKGROUND

Moten was indicted for causing serious bodily injury to Keiland Harris by stabbing or cutting him with a knife. More than seven months before his trial began, he filed a request for code of criminal procedure article 34.14 discovery, including requests for any audio recordings of Moten or any witness. The jury was chosen on a Friday. Before opening arguments on Monday morning, the prosecutor explained that, on Friday afternoon, he learned of two phone calls Moten had made to Teagan McGuire, a witness, while he was in jail. The prosecutor received the audio recordings of those calls on the morning of trial. Moten objected on the basis that the production of the evidence was untimely, asserting he was unable to effectively prepare for trial. The trial court did not rule at that time saying they would "take that up when we get to that point." When the State called McGuire to the stand, Moten renewed his objections to the calls. The trial court overruled the objections and allowed the recording of the calls to be played for the jury. After all testimony and evidence, the jury found Moten guilty, assessing punishment at forty years of imprisonment.

## JAIL PHONE CALLS

In his sole issue, Moten contends the trial court abused its discretion by admitting the recordings of the calls he made to Teagan McGuire while he was

in the Navarro County jail.  He argues that the calls were always in the State's possession even though the Navarro County Sheriff's Office contracted with a third party to maintain jail phone calls on a third-party server.  Further, Moten asserts the State had a duty to seek out the evidence in a timely fashion.

**Standard of Review**

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard.  *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).  An abuse of discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably.  *See State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005); *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb it.  *Mechler*, 153 S.W.3d at 440.  We will sustain the trial court's decision if it was correct on any applicable theory of law. *Bowley*, 310 S.W.3d at 434.

**Applicable Law**

Texas Code of Criminal Procedure article 39.14(a) requires the State to produce "as soon as practicable after receiving a timely request from the defendant" reports, documents, papers, recorded statements, and other "evidence material to any matter involved in the action" and "in the possession,

custody, or control of the state or any person under contract with the state." TEX. CODE CRIM. PROC. ANN. art.39.14(a); *State v. Heath*, 696 S.W.3d 677, 683 (Tex. Crim. App. 2024).

Under article 39.14, items in the possession, control, or custody of the State includes items in the possession of law enforcement agencies. *Heath*, 696 S.W.3d at 693. The statute imposes a duty upon prosecutors as representatives of the State to disclose discoverable evidence as soon as practicable, meaning as soon as the State is reasonably capable of doing so, upon receiving a timely request from the defense. *Id.* at 702. The term "practicable" includes a requirement of reasonable diligence on the part of the prosecutor to discover what items the State has in its possession that it intends to introduce at trial. *Id.* at 700-01. That is, "once a discovery item is requested, the State now has an affirmative duty to search for the item and produce it to the defendant in a timely manner." *Id.* at 701.

Generally, article 39.14 removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose. *Watkins v. State*, 619 S.W.3d 265, 278 (Tex. Crim. App. 2021). The statute makes disclosure the rule and non-disclosure the exception. *Id.* at 277.

A violation of article 39.14 is a statutory error reviewed under a non-constitutional harm analysis. *Id.* at 291; *Watkins v. State*, No. 10-16-00377-CR, 2022 WL 118371, at \*1-2 (Tex. App.—Waco January 12, 2022, pet. ref'd) (mem. op.) (on remand). When conducting a harm analysis of non-constitutional error, the appellate court need only determine whether the error affected a substantial right of the defendant. *See* TEX. R. APP. P. 44.2(b). To make this determination, appellate courts must decide whether the error had a substantial or injurious effect on the jury verdict. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In performing a harm analysis, we examine the record as a whole considering certain nonexclusive factors: (1) the character of the error and its connection to the other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; (4) whether the State emphasized the complained-of error; (5) the trial court's instructions; (5) the defendant's theory of the case; and, if applicable, (6) relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023); *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). Further, the weight of the evidence of a defendant's guilt is a relevant factor in conducting a harm analysis under Rule 44.2(b). *See Motilla*, 78 S.W.3d at 360.

**Discussion**

*Admissibility of the Evidence*

Moten was arrested early on the morning of August 6, 2023, and he called McGuire within hours of his arrest. On October 17, 2023, Moten timely requested article 39.14 discovery, including written or recorded statements of the defendant and any witness the prosecuting attorney may call. Thereafter, the State had an affirmative duty to search for recordings and the burden to produce those recorded statements "as soon as practicable." TEX. CODE CRIM. PROC. ANN. art. 39.14(a); *Heath*, 696 S.W.3d at 701.

On the Monday morning testimony was to begin, the State explained that, on the previous Friday afternoon, a witness, later identified as Teagan McGuire, told them she received two jail phone calls from Moten. The State argued that it did not know about the calls, and had no way to know about them, until that Friday afternoon. It further argued that the State was not in possession of the calls until that Monday morning when someone from the Sheriff's department emailed the recordings to the prosecutor. The State contended that because the calls are stored on a server belonging to a third-party vendor, the calls were not in the possession of the Sheriff's office.

The statute specifically provides that the State must produce evidence in the possession, custody, or control of the State or any person under contract

with the State. TEX. CODE CRIM. PROC. ANN. art. 39.14(a). In article 39.14, the "state" includes law enforcement agencies. *Heath*, 696 S.W.3d at 693. Accordingly, the recordings of the August 6 jail phone calls, although on a server belonging to a company contracting with the Sheriff's office, were continually in the State's possession. *See id.* at 695.

Furthermore, article 39.14 does not contain a knowledge requirement. *See id.* at 700. Even if the prosecutor is unaware of all discoverable items in the State's possession, the State has an obligation to exercise reasonable diligence to ascertain what discoverable evidence is at its disposal. *Id.* at 701. Thus, the prosecutor was required to use reasonable diligence to discover what items the State had in its possession that it intended to introduce at trial. *Id.* at 700-701. As explained in *Heath*, "If a simple request to law enforcement for an item of discovery can result in its disclosure, as it did in this case, then disclosure is reasonably capable of being accomplished." *Id.* at 701. When Moten filed his article 39.14 discovery request, the prosecutor had an affirmative duty to search for all items requested, including recorded statements of Moten and witnesses, and produce it to the defendant in a timely manner. *Id.*

Here, the prosecutor obtained the recordings of the phone calls right away after McGuire alerted him to their existence. However, there is no

explanation as to why the prosecutor could not, on his own, request phone logs and recordings, if any exist, directly from the Sheriff's office without knowing for a fact that they exist. We conclude that the State failed to exercise reasonable diligence in ascertaining whether unknown but discoverable evidence existed. *See id.* at 701-02. Because the State violated article 39.14, the trial court abused its discretion by admitting the recordings of the phone calls Moten made from jail. *See Mechler*, 153 S.W.3d at 439-40.

### *Harm Analysis*

#### *Character of the Error*

In the phone calls, Moten did not admit guilt or say anything overtly incriminating. He told McGuire not to say anything, asked her if she was on his side, told her that he loved her, and offered to send her money. The statements made in the phone calls had no bearing on the facts of consequence in the case, whether Moten stabbed Harris. The character of the error weighs against a finding of harm.

#### *Nature of the Evidence Supporting the Verdict/Other Evidence Supporting Guilt*

Multiple witnesses testified that Moten instigated the fight with Harris, which occurred outside a bar at closing time, and no one else was nearby when Harris was stabbed. Further, Harris survived the attack and testified that Moten stabbed him. Gabriel Judge, Moten's co-worker, testified that he and

Moten arrived at the bar together and left the scene together in Moten's vehicle. Judge testified that Moten confessed to the stabbing as soon as they drove away. Additionally, there was testimony describing Harris's injury, a severe twelve-inch-long vertical laceration across his abdomen, as well as photographs of the wound. The jury could reasonably have found Moten guilty of aggravated assault with a deadly weapon. Given the strength of the inculpatory evidence, these factors weigh against a finding of harm.

Also to be considered is McGuire's testimony as to the contents of the calls that was proffered without objection. *See Cook*, 665 S.W.3d at 600. She testified that Moten called her from jail and asked her if she was going to be on his side. He also told her he was going to post bail and get out, told her not to say anything, offered to send her money, and told her that he loved her. McGuire testified that, in the calls, Moten did not say Judge stabbed Harris or that he, Moten, did not stab Harris. The erroneous admission of evidence will not result in reversal when other such evidence was received without objection either before or after the complained-of ruling. *Id.*

*State's Emphasis of the Complained-Of Error*

The State did not mention the jail phone calls in its opening jury argument or its closing argument. However, defense counsel, in his closing argument, commented on the jail calls. In rebuttal argument, the State

argued, in essence, that it was not reasonable that an innocent man would call McGuire and tell her not to say anything, assert that he wants her on his side, and offer to send her money. This was in response to Moten's defense that someone else stabbed Harris. Moten asserted that Gabriel Judge stabbed Harris while defending Judge's brother, Garrison. Although the State included the jail phone calls in its jury argument only after defense counsel raised them, and in direct response to a defensive theory, this weighs slightly in favor of finding harm.

Reviewing the entire record, we are unable to say that the trial court's admission of the jail phone calls affected Moten's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Morales*, 32 S.W.3d at 867. Therefore, the trial court's erroneous admission of the jail phone calls was harmless error. *See Cook*, 665 S.W.3d at 601. We overrule Moten's sole issue.

## CONCLUSION

Although the trial court erred in admitting the jail phone calls, the error was harmless. Accordingly, we affirm the trial court's judgment.

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  October 9, 2025

Before Chief Justice Johnson,
       Justice Smith, and
       Justice Harris
Affirmed
Publish
CRPM

