

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00257-CR

STEDMOND ABDULLAH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F0013-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Danielle Boone's seven-year-old daughter planned to spend a happy summer night at her grandmother's house. The child and her mother packed the child's belongings and headed to a local gas station. Boone realized that she had forgotten to pack her daughter's dolls and drove home to retrieve them. The car doors were left unlocked as Boone and her daughter approached the house. Boone was in the process of unlocking her front door when she heard someone step on her porch and say, "[H]ey." When she turned around, Boone saw an unmasked African-American male pointing a silver and black pistol in her direction.

Boone, who was scared for her life, began screaming but was not paralyzed by her fear. In an instant, she managed to unlock the front door, get inside, and usher her daughter inside to safety. The man lurched at the door and attempted to open it, but Boone was able to turn the door's deadbolt. She ran to the back of the house, released her dog through the back door to scare the perpetrator, and called the police. When Texarkana, Texas, police officers arrived, Boone exited her house, noticed that her car door was slightly ajar and discovered that her wallet had been stolen.

Two days later, the police arrested Stedmond Abdullah in Texarkana, Arkansas, in connection with another aggravated robbery. Abdullah was carrying a silver and black pistol at the time of his arrest. When presented with a photographic line-up, Boone identified Abdullah as the person who pointed a gun at her and her daughter. At trial, Boone also made an in-court identification of Abdullah as the perpetrator and testified that the gun retrieved during

2

Abdullah's Arkansas arrest looked like the gun that had been pointed at her. Abdullah was convicted by a jury of aggravated robbery and was sentenced to forty-five years' imprisonment.

On appeal, Abdullah argues (1) that the evidence is legally insufficient to show (a) that the aggravated assault occurred in the course of committing theft or (b) that a theft occurred, as alleged in the State's indictment, (2) that the trial court erred in admitting evidence of the extraneous Arkansas aggravated robbery, and (3) that the trial court erred by allowing the State to inform the jury that the victim of the Arkansas aggravated robbery was unavailable to testify when the record contained no evidence of unavailability as that term is used in Rule 804 of the Texas Rules of Evidence. We find (1) that the evidence was legally sufficient to support Abdullah's conviction, (2) that the extraneous offense was admissible for the purpose of showing intent to commit theft, and (3) that the State's reference to the victim's unavailability in response to Abdullah's comments about the Arkansas victim's absence was harmless. Consequently, we affirm the trial court's judgment.

## I.    The Evidence Was Legally Sufficient to Support Abdullah's Conviction

Abdullah challenges the legal sufficiency of the evidence. In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found aggravated robbery beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323

3

S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.  Here, the State alleged that Abdullah,

> while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten[ed] or place[d] Danielle Boone in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a gun[.]

Thus, "[t]o prove the essential elements of aggravated robbery in this case, the State had to show that [Abdullah] committed robbery as defined in Section 29.02 of the Penal Code, and used or exhibited a deadly weapon." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (citing TEX. PENAL CODE ANN. § 29.03(a)(2)).  To show that Abdullah committed robbery, the State had to prove that "in the course of committing theft as defined in Chapter 31 of the Penal Code and with intent to obtain or maintain control of the property, [Abdullah] intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death." *Id*. (citing TEX. PENAL CODE ANN. § 29.02(a)(2)).  "A person commits theft under Chapter 31 if he

4

unlawfully appropriates property with intent to deprive the owner of the property." *Id*. at 156 (citing TEX. PENAL CODE ANN. § 31.03(a)).

"The phrase 'in the course of committing theft' is defined by Section 29.01 of the Penal Code to mean 'conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.'" *Id*. at 155–56 (citing TEX. PENAL CODE ANN. § 29.01(1)). Thus, if the theft was a mere afterthought to the completed offense of assault, the evidence would be insufficient to show that the assault occurred in the course of committing theft. *See Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002) (Keasler, J, concurring) (citing *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992) (en banc)). Emphasizing that Abdullah did not demand money from Boone and that Boone did not find the wallet missing until after the assault, Abdullah challenges the element of intent. He also argues that the evidence was insufficient to show that a theft occurred because there was no physical evidence tying him to the missing wallet.

Boone had just returned from the gas station where she used her wallet. She placed her wallet in the passenger seat of the car prior to returning home to retrieve the dolls. Boone testified that she discovered that her wallet was missing as soon as the police responded to her call. "The general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Id.* "The question remaining is whether, and under what circumstances, evidence of a motive other than theft can negate the natural inference that arises when a theft immediately follows an assault." *Id.* At trial, there was no evidence of any motive other than theft.

5

"The State has always been able to prove robbery by force or threats committed before the theft or attempted theft." *Sorrells*, 343 S.W.3d at 158. Based on Boone's testimony that the wallet was missing immediately after the assault, a rational juror could draw a reasonable inference that the assault and the theft occurred as integral parts of a continuous, single episode, and thus the assault was committed during the commission of theft. *See id.* Here, we find that the evidence in this case is sufficient to support an inference that (1) a theft occurred, and (2) the assault was committed in the course of the commission of the theft. Therefore, we overrule Abdullah's first point of error.

## II.    The Extraneous Arkansas Offense Was Admissible to Show Intent

Over objection, the State introduced an extraneous offense through testimony of three Texarkana, Arkansas, police officers. Officer Shane Kirkland testified that he responded to an aggravated robbery at the Ambassador Inn motel and spoke with the victim, Travis Burnett. While canvassing the area for the suspect, Officer Edward Chattaway spotted Abdullah fleeing on foot and apprehended him. Abdullah was carrying a silver and black pistol. Officer Wayne Easley testified that he interviewed Abdullah about the aggravated robbery at the Ambassador Inn. Easley's testimony and the audio/video recording of the interview, which was played for the jury, showed that Abdullah (1) admitted to approaching Burnett and asking him for a cigarette, (2) stated that his gun would have been visible to Burnett, and (3) admitted to taking money from Burnett. During the interview, Abdullah claimed that he only wanted to "bum" a cigarette from Burnett. According to Abdullah, Burnett must have gotten scared when he saw

6

the gun and thought to appease Abdullah by giving him money even though Abdullah did not ask him for money.  Abdullah argues that admission of this evidence constituted reversible error.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . . intent . . . [and] identity . . . ." TEX. R. EVID. 404(b).  Abdullah continuously objected to the introduction of the Arkansas offense.  In response, the State argued that it was offering the Arkansas offense for the purpose of proving intent to commit theft, and to show identity.  After discussing that matter at length outside of the jury's presence, the trial court admitted the extraneous offense for the limited purpose of determining both identity and intent. On appeal, Abdullah argues that the trial court's ruling violated Rule 404(b) "because the facts of the charged offense and the extraneous offense were not sufficiently similar."

"We review a trial court's ruling under the Rules of Evidence for an abuse of discretion." *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).  "We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement." *Id*.  "If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision." *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).  "We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling." *Id*.; *see State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Here, the State offered the Arkansas offense to show intent to commit theft.  "Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous

offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed." *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd) (citing *Caro v. State*, 771 S.W.2d 610, 617 (Tex. App.—Dallas 1989, no pet.); *McGee v. State*, 725 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no pet.)). At trial, Abdullah questioned Boone and responding officer, Will Scott, on whether Abdullah had made any demand for money, and emphasized that the theft occurred, if at all, after the assault. On appeal, Abdullah challenges the legal sufficiency of the evidence supporting the intent element. Clearly, intent to commit theft was (and is) a contested issue.[1]

The case of *Cantrell v. State* sheds light on whether the extraneous offense was admissible to show intent. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987). We examine the facts of the charged offense in that case, the facts of the extraneous offense, and the court's reasoning and ruling. Cantrell's girlfriend, Phyllis Galyean, had a sexual relationship with Phillip Green, the victim of the offense. *Id*. at 86. Galyean told Cantrell that Green had raped her. *Id*. At 9:00 a.m., when Green was getting ready for work, Cantrell and Galyean went to Green's Dallas apartment, rang the doorbell, and forcefully entered the apartment after Green cracked open the door. *Id*. at 86. Cantrell drew a .38 caliber snub-nosed revolver and pushed Green into a chair. *Id*. Cantrell tucked the gun back into his belt after Green denied Galyean's accusations, but drew a knife and demanded money from Green. *Id*. After Green claimed that he had no cash, Cantrell forced Green to write a $5,000.00 check made payable to Galyean, took

---

[1]During deliberation, the jury asked, "[I]s the intent to commit robbery applicable to this charge . . . ?"

the check, and left. *Id*. During Galyean's cross-examination, she testified that the purpose in going to Green's apartment "'was to get to the truth of the matter and talk to Phil Green about it'" and that neither she nor Cantrell had any intention to rob Green. *Id*. at 88.

In rebuttal, the State offered, over objection, testimony from Sherry Tinerella about an incident that occurred eight months after Green was robbed. Tinerella, who lived in Houston, testified that she awoke at about 8:30 a.m. to find Cantrell, whom she did not know, pointing a pistol at her. *Id.* Cantrell took Tinerella's jewelry, gifts, cash, and other items and then stole her automobile. *Id*.

On appeal, Cantrell argued that the trial court erred in admitting the extraneous offense involving Tinerella. The Texas Court of Criminal Appeals disagreed. Because the State's indictment required it to prove that Cantrell used or exhibited a deadly weapon and threated Green with the intent to obtain and maintain control of Green's property and deprive him of the property, the court found that intent to commit theft was a material issue in the case. *Id*. at 89. It reasoned, "[e]ven if it can be argued in the instant case that [Cantrell]'s intent can be inferred from the act of obtaining a check . . . the issue of intent was later contested by Galyean's testimony . . . ," and thus, the extraneous offense was admissible to show intent. *Id*.

The court recognized the requirements of similarity or signature in cases involving the issue of identity or absence of mistake or accident.[2] However, it wrote, "the degree of similarity

_____

[2]"When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005) (quoting *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992)). "Such extraneous offense evidence is admissible to prove identity when the common characteristics of each

required is not so great where intent is the material issue as when identity is the material issue, and extraneous offenses are offered to prove modus operandi." *Id.* at 90. Because the extraneous offense and the charged offense were both (1) aggravated robberies, (2) committed at private residences, (3) committed at approximately the same time of the morning, and (4) "were committed at gunpoint shortly after the victim had awaken[ed] or was getting ready to go to work," the court found "sufficient common similar characteristics between the offenses" in spite of remoteness in time and other differences between the two offenses. *Id.*

Here, the trial court made an assessment of the similarities between the charged offense and the extraneous offenses based on arguments of counsel and testimony given by Kirkland outside of the jury's presence. The trial court reasoned that

> the parallels I see between the two are that he acts alone, he approaches people entering buildings, . . . [s]o that was a little significant. Again, the fact it was a black and silver pistol, may or may not be the same one. They're similar in time, two days apart. Both occur at night, and he was arrested near the scene on the Arkansas side. And he was ID'd by the victim on the Texas side.

The similarities discussed by the trial court in this case are of greater quality than those relied on in *Cantrell*. Keeping in mind the rule that the degree of similarity between the charged offense and the extraneous offense need not be so great in cases where the State seeks to admit the extraneous offense to show intent as opposed to identity, we cannot say that the trial court abused its discretion in admitting the Arkansas offense for the purpose of showing intent to commit theft. *Cantrell*, 731 S.W.2d at 90; *Brown v. State*, 96 S.W.3d 508, 512–13 (Tex. App.—Austin 2002, no pet.) (citing *Wiggins v. State*, 778 S.W.2d 877, 886 (Tex. App.—Dallas 1989,

---

offense are so unusual as to act as the defendant's 'signature.'" *Id.* "The signature must be apparent from a comparison of the circumstances in both cases." *Id.*

10

pet. ref'd)); *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd); *Birl v. State*, 763 S.W.2d 860, 861 (Tex. App.—Texarkana 1988, no pet.). Therefore, we overrule Abdullah's second point of error.[3]

### III. State's Reference to "Unavailable" Victim During Closing Argument Was Harmless

The State issued a subpoena for Burnett. Yet, despite expending "great effort," the State was unable to locate him. It explained that Burnett was a truck driver who was staying at the Ambassador Inn for the night while passing through Texarkana. During closing argument, Abdullah argued,

> [Y]ou heard some evidence about something that happened in Arkansas, but you know what you didn't hear? You didn't hear anybody take the stand and say, he stole my money, he held me up. Not one person took the stand and said he robbed me in Arkansas. Some police said they arrested him for something in Arkansas, but you didn't hear from a single person in Arkansas that said he stole their money.

Either party may comment upon the failure of his adversary to call available competent witnesses. *Patterson v. State*, 387 S.W.2d 390, 391 (Tex. Crim. App. 1965); *see Fant-Caughman v. State*, 61 S.W.3d 25, 30 (Tex. App.—Amarillo 2001, pet. ref'd). We interpret Abdullah's jury argument as a comment on the State's failure to call Burnett.

The State's response to Abdullah's argument prompted the following discussion:

> [BY THE STATE]: . . . . He directly brought up to you that we didn't produce a victim over from Arkansas. I am now allowed to answer that question for you because he has misled you. That victim --
>
> [BY DEFENSE COUNSEL]: Objection, Your Honor. May we approach?

---

[3]Because we are to uphold a trial court's admission of evidence if it is correct under any theory of law applicable to the case, we need not address Abdullah's argument that the trial court erred in admitting the Arkansas offense for the purpose of showing identity. *See Bowley*, 310 S.W.3d at 434.

. . . .

(AT THE BENCH, ON THE RECORD)

[BY DEFENSE COUNSEL]: They can't get into any facts that are not in evidence.

. . . .

[BY THE STATE]: This is rebuttal. He brought it up.

THE COURT: I wouldn't touch on it very hard . . . .

[BY THE STATE]: Okay. But I can say that he's unavailable.

THE COURT: Bring it to a pretty quick conclusion. Overruled . . . .

(OPEN COURT, DEFENDANT AND JURY PRESENT)

[BY THE STATE]: Okay. The witness is unavailable to testify. He's not available. I would love for him to be in here. He's not available to testify, and I will leave it at that.[4]

Permissible jury argument falls into one of four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). On appeal, Abdullah argues that the trial court erred in allowing the State to inform the jury that Burnett was unavailable because (1) the State's argument did not fall into the permissible categories of jury argument, (2) there was no evidence that Burnett was unavailable under Rule 804 of the Texas

---

[4]For the purposes of this analysis, we assume that the trial court's ruling adequately preserved Abdullah's specific complaint related to the use of the term unavailable.

Rules of Evidence, (3) no ruling on unavailability had been secured by the State, and (4) the argument that Burnett was unavailable constituted an argument outside of the record.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

We agree that the record fails to show that Burnett was unavailable as the term is defined by Rule 804 of the Texas Rules of Evidence.[5]  However, Abdullah's reliance on that Rule is

---

[5]Rule 804, titled "Hearsay Exceptions; Declarant Unavailable," reads,

"Unavailability as a witness" includes situations in which the declarant:

(1)    is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

(2)    persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

(3)    testifies to a lack of memory of the subject matter of the declarant's statement;

(4)    is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5)    is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means.

A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrong-doing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

TEX. R. EVID. 804.

misplaced in the context of this case. Rule 804 simply sets forth an exception to the hearsay rule when the declarant is unavailable as a witness.

Permissible jury argument includes an answer to the argument of opposing counsel. *Brown*, 270 S.W.3d at 570. Abdullah's jury argument was a comment on the State's failure to call Burnett. "The failure to produce available evidence justifies an inference that it would be unfavorable to the party who failed to procure it." *Albiar v. State*, 739 S.W.2d 360, 363 (Tex. Crim. App. 1987). Thus, the State was entitled to respond to Abdullah's argument.[6] However, the question remains whether the State was entitled to respond by informing the jury that Burnett was unavailable.

Even if we were to conclude that the trial court erred in allowing the State to inform the jury that Burnett was unavailable, we find that the error was harmless. Nonconstitutional error is analyzed under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires that error be disregarded unless it affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc); *George v. State*, 117 S.W.3d 285, 289 (Tex. App.—Texarkana 2003, pet. ref'd). A substantial right is not affected if the reviewing court has a "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (quoting *Johnson v.* State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998))).

---

[6]A prosecutor may comment in jury argument on the defendant's failure to call a material witness when it is shown that such witness was available to testify, and the prosecutor may also argue that the reason for such failure is that any testimony by the absent witness would have been unfavorable to the defense. *Albiar*, 739 S.W.2d 360. The mere fact that the witness was under subpoena from the State does not make him unavailable to the defense. *Id*. at 363; *see* TEX. CODE CRIM. PROC. ANN. art. 24.03 (West 2009).

14

When analyzing the likelihood that the improper jury argument had a substantial influence on the outcome of the case, we look to the record as a whole and consider (1) the severity of the misconduct or prejudicial effect, (2) any curative measures taken, and (3) the certainty of conviction or punishment assessed absent the misconduct. *Mosley*, 983 S.W.2d at 259–60; *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

The members of the jury were likely not trained on the legal definition of unavailability as it is set forth in Rule 804. Accordingly, the jury probably interpreted the State's argument as simply informing them that Burnett was not accessible or obtainable[7]—a deduction that it should have reasonably made since Burnett's testimony would have been favorable to one party, but he was not produced by either party. Yet, even if the State's comment was characterized as mildly inappropriate and no curative measure was taken, the evidence of Abdullah's intent to steal Boone's wallet—the main contested fact issue—was strong. Thus, we conclude that the State's reference to Burnett's unavailability had little or no effect. We overrule Abdullah's last point of error.

---

[7]The common definition of "available" is "present or ready for immediate use" or "ACCESSIBLE, OBTAINABLE." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 84 (11th ed. 2006).

## IV.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     October 14, 2014
Date Decided:       November 18, 2014

Do Not Publish