**Opinion issued March 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00173-CR

————————————

**OLIVER HUGHES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1348998**

## MEMORANDUM OPINION

A jury convicted appellant, Oliver Hughes, of the first-degree felony offense

of aggravated robbery and, after appellant pleaded true to the allegations in an

enhancement paragraph, assessed punishment at seventeen years' confinement.[1]  In two issues, appellant contends that the trial court erroneously (1) admitted evidence of two extraneous offenses, and (2) failed to give a timely oral limiting instruction to the jury following the admission of the extraneous offense evidence.

We affirm.

## Background

On May 26, 2012, Valery Gulley, the complainant, drove to an apartment complex on Crofton Street in northeast Houston to visit a friend he knew as "Slim."  Slim is appellant's brother.  When Gulley pulled up to the apartments, he saw appellant outside "cursing and screaming and yelling" while on his cell phone.  Appellant then walked up to Gulley's car and started yelling and screaming at him.  Appellant pulled out a gun, demanded money, and hit Gulley in the face with the gun.  Gulley handed appellant $25 and drove away.

Gulley drove around the area for about seven or eight minutes searching for law enforcement before he saw police officers pull into the same apartment complex he had just left.  The police officers stopped in front of appellant's apartment.  Gulley then reported the robbery to one of the officers and showed the officer his split lip from where appellant had hit him in the face with the gun.  Gulley gave the officers a description of his assailant and then saw appellant

---

[1]    *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

2

already sitting in the back of a patrol car. He identified appellant as the person who had assaulted and robbed him.

Houston Police Department ("HPD") Officer J. Black testified that he received a dispatch regarding a disturbance on Crofton Street involving appellant and a weapon around 3:40 a.m. on May 26, 2012. Gulley was not the complainant for this incident, and Officer Black did not provide details of this incident. At the apartment complex, Officer Black spoke with the 9-1-1 caller, a man named Edinson Green, and afterwards searched the area for appellant but could not find him. Officer Black then left the complex, but returned around 5:00 a.m. after a second call from Green. HPD Officer J. Huckabee saw appellant, who matched the physical description given by Green, reaching into the wheel well of a truck parked behind the apartment. Appellant did not have a weapon on his person, but Officer Black looked at the wheel well of the truck and saw a gun sitting on top of the tire.

After Officers Black and Huckabee placed appellant in custody, Gulley approached the officers and reported appellant's assault and robbery of him. Gulley could not give the officers the name of his assailant, but he could give a physical description, which matched appellant. Gulley then saw appellant sitting in the back of Officer Black's patrol car, and he identified appellant as his

3

assailant.  At trial, Gulley identified the gun that Officer Black recovered from the wheel well as the gun that appellant used to rob him.

Appellant represented himself at trial.  At a pretrial conference, the State agreed that it would refer to the reason why the officers were at Crofton Street before encountering appellant and Gulley as an "ongoing investigation," and it would not go into the details of any extraneous offenses.  On re-cross examination, appellant asked Officer Black when he had received the initial call to go to Crofton Street and whether Gulley or someone else had called 9-1-1.  Appellant asked the trial court if a copy of the initial 9-1-1 call could be played for the jury.  The State argued that appellant had "opened the door to the whole thing," referring to the initial aggravated assault offense that brought the officers out to the apartment complex.  The trial court responded, "Not yet.  I said not yet."  Appellant then questioned Officer Black about whether he had ever determined that appellant had a motive for robbing Gulley.

After appellant finished examining Officer Black, the trial court held a hearing outside the presence of the jury.  The trial court asked appellant, "Do you recall me saying if you opened the door, then there is a possibility that the evidence of the prior offense on that night to which you've been arrested and charged for but which is not a subject of this trial, those details could come in?"  The trial court heard a statement of probable cause on the initial offense and then stated, "The

4

situation, Mr. Hughes, is you repeatedly asked the officer about, did he have any motive whatsoever, things of that nature. You opened the door, so now it comes in."

The State then recalled Officer Black and asked him to tell the jury about the initial 9-1-1 call that brought him to Crofton Street. At the apartment complex, Officer Black met with Edinson Green, and Black began investigating "[a]n aggravated assault with a deadly weapon." Appellant and the trial court had the following exchange before the jury:

| | |
|---|---|
| [Appellant]: | [W]ould you please instruct the jury that I'm only in here right now—in here for one charge and one charge only, and that's aggravated robbery of Mr. Valery Gulley? |
| The Court: | For purposes of the record, that's what he's charged with. |
| [Appellant]: | One charge and one charge only. |
| The Court: | That's what he's charged with in this trial. |

Officer Huckabee also testified concerning the first 9-1-1 call, the officers' initial meeting with Green, their search of the apartment complex for appellant, and their eventual encounter with appellant.

During appellant's cross-examination of Gulley, the following exchange occurred:

| | |
|---|---|
| [Appellant]: | What was the motive for me robbing you in front of my door for $25 where I pay rent at? |

5

| [Gulley]: | You want to know why I feel you would do that? |
|---|---|
| [Appellant]: | Yeah. |
| [Gulley]: | Because you were on drugs, and it was plain to see. |
| [Appellant]: | Okay. You say I was on drugs? |
| [Gulley]: | That's the only way I can see you doing that. |
| The Court: | Let's move off of that subject. |
| [Appellant]: | Do you have any proof to substantiate I was on drugs? |
| [Gulley]: | You asked me what I thought. |

The next day, the State informed the trial court of its intention to recall Officer Black to testify not only regarding the original 9-1-1 call relating to the aggravated assault offense but also regarding the fact that, after the officers placed appellant in custody, they conducted a protective sweep of his apartment and discovered cocaine in plain view inside the apartment. Appellant objected on relevance grounds. The trial court stated, "He opened the door. That's the reason why you get this other testimony in."

Before the State recalled Officer Black, the trial court gave the following instruction to the jury:[2]

> Ladies and gentlemen of the jury, you are instructed that the following evidence concerning an alleged offense or offenses other than the offense which is alleged in the indictment against the defendant may only be considered by you if you believe beyond a reasonable doubt that the defendant committed these offense or offenses, if any. And

---

[2] The jury charge contained a substantively identical instruction.

6

even then, you may only consider said evidence in determining the motive, opportunity, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense alleged against the defendant in the indictment in the trial. You are not to consider this evidence for any other purpose whatsoever.

Officer Black then testified that he was originally called to Crofton Street to investigate a robbery, and after speaking with Green, the 9-1-1 caller, he began investigating an aggravated assault involving a deadly weapon allegedly committed by appellant. Officer Black testified that after the officers came back to the apartment complex a second time and placed appellant in custody, but before officers spoke to Gulley, the officers noticed that the front door to appellant's apartment was open, and they searched the apartment "to ensure there were no further suspects or possibilities of anyone else being armed." During this search, officers found cocaine in plain view in appellant's apartment.

The jury ultimately found appellant guilty of the offense of aggravated robbery and, after appellant pleaded true to the allegations in an enhancement paragraph, assessed punishment at seventeen years' confinement. This appeal followed.

### Extraneous Offense Evidence

In his first issue, appellant contends that the trial court erred in admitting evidence that he had engaged in an extraneous aggravated assault offense and that he possessed cocaine in his apartment at the time of his arrest.

7

### A. *Standard of Review*

We review a trial court's decision to admit evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)). As long as the trial court's evidentiary ruling is "within the zone of reasonable disagreement," we may not reverse it. *Rezaie v. State*, 259 S.W.3d 811, 814 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996)). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. *Admission of Extraneous Offense Evidence*

Texas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, extraneous offense or bad acts evidence may be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* A trial court's Rule 404(b) ruling admitting extraneous offense evidence is generally within the "zone of reasonable disagreement," and thus does not constitute an abuse of discretion, if there is

8

evidence supporting that an extraneous act is relevant to a material, non-propensity issue. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

"Extraneous offense evidence is admissible if it has some logical relevance aside from character conformity." *Bass v. State*, 270 S.W.3d 557, 562 (Tex. Crim. App. 2008). A defendant can "open the door" to the admission of otherwise inadmissible extraneous-offense evidence to rebut a defensive theory. *See id.* at 563 (holding that defense opening statement can open door to admission of extraneous-offense evidence to rebut defensive theory presented in opening statement); *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) (holding that it is within trial court's discretion to admit extraneous-offense evidence to rebut defensive theory raised in opening statement). "[A] party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted." *Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010). Moreover, "the prosecution may always offer evidence to show motive for the commission of an offense because it is relevant as a circumstance to prove the commission of the offense." *Crane v. State*, 786 S.W.2d 338, 350 (Tex. Crim. App. 1990) (quoting *Porter v. State*, 623 S.W.2d 374, 385–86 (Tex. Crim. App. 1981)); *see also Ladd v. State*, 3 S.W.3d 547, 567–68 (Tex. Crim. App. 1999) (holding that trial court did not abuse its discretion in admitting, in murder trial, evidence that defendant smoked cocaine on night of murder because court could

9

have reasonably concluded "that the extraneous offense evidence was admissible to help prove appellant's motive for the killing, to wit: to obtain the victim's property so that he could exchange it for cocaine").

### 1. Extraneous Aggravated Assault

With respect to the evidence that appellant assaulted Edinson Green at the Crofton Street apartment complex before robbing Gulley, the State argues that appellant opened the door to admission of evidence concerning this offense by questioning Officer Black about who made the initial 9-1-1 call, indicating that he wished to play the 9-1-1 call to the jury, and then failing to object when the State later offered a recording of the 9-1-1 call into evidence. We agree.

On cross-examination, appellant asked Officer Black about the initial 9-1-1 call that brought him out to the apartment complex. Appellant asked:

| [Appellant]: | Did the plaintiff, Mr. Gulley—did he call the police or someone else? |
|---|---|
| [Officer Black]: | Someone else. |
| [Appellant]: | Someone else. Okay. Someone else called 911. Where was the place of the scene where these events took place? What was the physical address? |
| [Officer Black]: | 9636 Crofton. |
| [Appellant]: | And whose address is that? |
| The Court: | If you know. |
| [Appellant]: | Whose address is 9636 Crofton? |
| [Officer Black]: | The person who called, as well as yourself. |

10

| [Appellant]: | Okay. But we don't know the person who called? We don't know? |
|---|---|
| [Appellant]: | Excuse me. Your Honor, could you ask the State—do we have a copy of the 911 call? |
| [The State]: | We'll play the 911. |
| The Court: | No, not yet. |

By questioning Officer Black about the initial 9-1-1 caller, suggesting that Officer Black did not know the identity of the 9-1-1 caller, and seeking to play the 9-1-1 call for the jury, appellant opened the door to testimony concerning the aggravated assault offense that was the subject of the 9-1-1 call. *See Bowley*, 310 S.W.3d at 435 (stating that "a party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted"); *Bass*, 270 S.W.3d at 563 (holding that defendant may open door to admission of extraneous-offense evidence to rebut defensive theory).

We hold that the trial court could have reasonably concluded that, through his questioning of Officer Black, appellant opened the door to testimony concerning the extraneous aggravated assault offense and that the trial court, therefore, did not err in admitting this evidence.

### 2. *Extraneous Possession of Cocaine*

With respect to the evidence of appellant's possession of cocaine in his apartment at the time of his arrest, the State argues that appellant opened the door

11

to this evidence by repeatedly asking Gulley about his impressions of appellant's motive for the robbery and that appellant's possession of cocaine in his apartment tended to prove that he committed the offense because he was under the influence of drugs. We agree with the State that appellant opened the door to admission of this evidence.

During his cross-examination of Gulley, appellant repeatedly asked Gulley why he thought appellant, who had been standing in front of his own apartment at the time he encountered Gulley, would rob Gulley at gunpoint for $25. Gulley responded that he thought appellant was high during the incident. Appellant then asked Gulley if he had any proof to substantiate his assertion that appellant was under the influence of drugs. The trial court then ruled that appellant had opened the door to testimony that police officers, during the search of appellant's apartment following his arrest, found cocaine in plain view in the apartment. The State recalled Officer Black to testify to this search and to the recovery of cocaine from appellant's apartment.[3]

We agree with the State that, through his questioning of Gulley, appellant opened the door to introduction of evidence that he possessed cocaine in his apartment at the time of the offense. Throughout his questioning of Gulley, Officer Black, and Officer Huckabee, appellant repeatedly sought to elicit

---

[3] Appellant raises no argument on appeal that this search was impermissible pursuant to the Fourth Amendment.

12

testimony that the State had no motive for why appellant would rob Gulley, thus casting doubt on Gulley's testimony. Eliciting testimony from Gulley that Gulley believed appellant was high during the incident, and, specifically, asking Gulley whether he had any proof to substantiate that belief, opened the door to allow the State to produce evidence that appellant was in possession of and using cocaine at the time of the offense. *See Bowley*, 310 S.W.3d at 435 (stating that "a party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted"); *Bass*, 270 S.W.3d at 563 (holding that defendant may open door to admission of extraneous-offense evidence to rebut defensive theory); *Ladd*, 3 S.W.3d at 567–68 (holding that trial court did not abuse its discretion in admitting evidence that defendant had used cocaine on night of murder because such evidence helped prove appellant's motive for murder). We conclude that the trial court reasonably could have concluded that appellant opened the door to admission of evidence that he possessed cocaine at the time of the robbery. We hold that the trial court did not err in admitting this evidence.

We overrule appellant's first issue.[4]

---

[4]    Appellant cites the Court of Criminal Appeals' opinion in *Couret v. State*, 792 S.W.2d 106 (Tex. Crim. App. 1990) (per curiam), in which the trial court erroneously admitted evidence that Couret, who was on trial for burglary of a habitation, possessed a hypodermic needle in his pocket at the time of arrest, for the proposition that "[w]ithout some sort of link between the discovery of drugs or drug paraphernalia and the underlying criminal offense, evidence of the defendant's possession of a controlled substance is inadmissible under Rule

13

## Limiting Instruction

In his second issue, appellant contends that the trial court erroneously failed to give a timely instruction limiting the jury's consideration of the extraneous offense evidence.

Texas Rule of Evidence 105(a) provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX. R. EVID. 105(a) (emphasis added). "*When requested*, the court must also include an instruction not to consider evidence admitted for a limited purpose unless the jury finds beyond a reasonable doubt that the defendant committed the extraneous offenses." *McNeil v. State*, No. 01-13-00234-CR, 2014 WL 6601514, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, pet. struck) (emphasis added); *see also Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001) (declining to overrule line of cases requiring "a request for a limiting instruction at the admission of the evidence"). If a defendant fails to request a limiting

---

404(b)." Here, however, Gulley testified that he believed appellant committed the charged aggravated robbery because he was high. Thus, in this case, there is a connection between appellant's possession of cocaine and the charged offense. We therefore conclude that *Couret* is factually distinguishable and does not compel the exclusion of the evidence that appellant possessed cocaine at the time of his arrest.

14

instruction at the first opportunity, the evidence is admitted for "all purposes." *Hammock*, 46 S.W.3d at 895. To be sufficiently specific such that the defendant preserves error for review, the defendant's request for a limiting instruction must inform the trial court "as to what limitation should be placed upon the evidence." *Puente v. State*, 888 S.W.2d 521, 528 (Tex. App.—San Antonio 1994, no pet.); *see also Wells v. State*, 241 S.W.3d 172, 179 (Tex. App.—Eastland 2007, pet. ref'd) (holding same).

Here, appellant did not make a sufficiently specific request for a limiting instruction. He did not inform the trial court "as to what limitations should be placed upon the evidence." *Wells*, 241 S.W.3d at 179; *Puente*, 888 S.W.2d at 528. Instead, he merely requested that the trial court instruct the jury that he is "in here for one charge and one charge only, and that's aggravated robbery of Mr. Valery Gulley." That is precisely the instruction that the trial court gave at that time when it stated in response, "That's what he's charged with in this trial." We hold that the trial court did not err when it failed to give a limiting instruction at the time the State introduced evidence of the extraneous aggravated assault charge.

With respect to the possession of cocaine evidence, before the State recalled Officer Black and he testified concerning this evidence, the trial court gave the following instruction:

> Ladies and gentlemen of the jury, you are instructed that the following evidence concerning an alleged offense or offenses other than the

offense which is alleged in the indictment against the defendant may only be considered by you if you believe beyond a reasonable doubt that the defendant committed these offense or offenses, if any. And even then, you may only consider said evidence in determining the motive, opportunity, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense alleged against the defendant in the indictment in this trial. You are not to consider this evidence for any other purpose whatsoever.

The trial court included a substantively identical instruction in the jury charge. The jury was thus instructed before it heard evidence that appellant possessed cocaine in his apartment at the time of the offense that it was not to consider that evidence for any purpose other than for "determining the motive, opportunity, plan, knowledge, identity or absence of mistake or accident of the defendant." Therefore, to the extent appellant complains that the trial court did not properly instruct the jury that it could consider the evidence of possession only for certain purposes, we hold that the trial court did not err.

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

16