**Opinion filed June 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00139-CR

_____

## ROBERT MUNOZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR 38,496**

## M E M O R A N D U M   O P I N I O N

Robert Munoz appeals his convictions by a jury for two counts of sexual assault of a child younger than seventeen years of age. TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (c)(1) (West 2011). The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal justice for a term of ten years on each count with the sentences to be served consecutively. Appellant brings four issues on appeal. He argues in his first three

issues that the trial court erred when it admitted the following evidence: (1) testimony that a witness had previously been convicted of hindering Appellant's apprehension, (2) testimony concerning Appellant's violation of his agreement with his bail bondsman, and (3) testimony of Appellant's pre-arrest silence. In his fourth issue, Appellant asserts that he received ineffective assistance of counsel at trial. We affirm.

*Background Facts*

M.A.K. was fifteen years old at the time of the conduct charged in the indictment. She testified that her mother, Elizabeth, worked with Appellant at Prepaid Legal Services. Although Appellant was already married with children, Elizabeth and Appellant began a romantic relationship. Elizabeth would bring M.A.K. and her younger brother, W.W.K., over to Appellant's house to "hang out and go to the movies and just be around each other." Occasionally, M.A.K. would stay the night at Appellant's house with Elizabeth and W.W.K. Elizabeth would sleep with Appellant while M.A.K. and W.W.K. would sleep on a pallet in the living room.

Elizabeth, M.A.K., and W.W.K. stayed at Appellant's house during the 2007–2008 Christmas vacation. The night before returning to school, M.A.K. woke up in the middle of the night because she "felt pressure on [her] leg. It felt like -- it felt like a hand on [her] leg." M.A.K. felt the hand on her upper thigh, and the hand moved up her leg, under her shorts. M.A.K. said that she felt the hand go under her underwear and penetrate her in her "no-no spot."[1] M.A.K. testified that it was Appellant's fingers and that he moved his fingers "in and out and around." M.A.K. then turned over and began to hyperventilate. Appellant ran into the kitchen, and

---

[1]M.A.K. subsequently clarified her meaning of "no-no spot" as a female's genital area.

Elizabeth came out of the bedroom. Elizabeth told M.A.K. to "shut up and go to sleep because [she] had school the next morning."

The next morning, M.A.K. told her mother that Appellant had touched her. Elizabeth got upset and told M.A.K. to shut up and go to school. When M.A.K. arrived home from school, Elizabeth confronted her in the presence of Appellant and asked if what she had said was true. M.A.K testified that, when she answered in the affirmative, Appellant said, "If I did do anything, I didn't mean to." M.A.K. then left the room at the request of Elizabeth. A week later, M.A.K. was sleeping at her house when she was awakened by a hand on her thigh. She "felt a hand move up [her] leg and under [her] underwear, and his fingers penetrated [her] no-no spot." M.A.K. turned over, and Appellant ran from the room. M.A.K. did not tell her mother about the second time "[b]ecause she didn't believe [M.A.K.] the first time."

M.A.K. did not report the incidents to the authorities until December 2010. M.A.K. called the police to report that Appellant had assaulted her mother. While M.A.K. was talking to the police about the assault on her mother, she also told them about the sexual assaults that Appellant had committed against M.A.K.

At the time of trial, the romantic relationship between Elizabeth and Appellant continued to exist. Elizabeth was called by the State as a witness. Elizabeth's testimony supported Appellant's position at trial rather than her daughter's allegations. With regard to the first incident, Elizabeth testified that M.A.K. told her that Appellant had touched her. However, Elizabeth said that she "confronted them, and [M.A.K.] said it wasn't true." Elizabeth also denied that she fought with Appellant the night M.A.K. called the police. Two weeks prior to trial, Elizabeth recorded M.A.K. in an effort to get her to recant.

*Analysis*

Appellant's first three issues address the admissibility of evidence at trial. We review a trial court's ruling on admissibility of evidence for an abuse of discretion.

3

*See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

In his first issue, Appellant argues that the trial court erred when it permitted the State to question Elizabeth about charges filed against her for hindering Appellant's apprehension. The prosecutor initially asked Elizabeth, "You love the Defendant as much as you love your children; isn't that correct? . . . Isn't it true you went to jail for the Defendant?" Appellant's trial counsel lodged a general relevancy objection to these questions. The prosecutor responded that "[w]e're showing it for the motive and bias of the testimony of the witness." The trial court overruled Appellant's objection but instructed the jury to only consider Elizabeth's responses for the purpose of showing the motive and bias of the witness. When asked by the prosecutor if she had gone "to jail for the Defendant," Elizabeth responded, "They put me in jail." The prosecutor then asked Elizabeth, "Did you go to jail for the offense of hindering apprehension, the apprehension of the Defendant?" to which she replied in the affirmative. Appellant's trial counsel did not lodge an objection to the prosecutor's subsequent question that identified the particular offense for which Elizabeth was incarcerated.

Appellant contends that the subsequent identification of the offense was cumulative of the previous evidence of Elizabeth's motive or bias. He additionally contends that this evidence was unfairly prejudicial under Rule 403 and that the "impact of this cumulative evidence was that jurors could wrongly infer that, as Appellant's lover, [Elizabeth] was attempting to aid Appellant in avoiding apprehension." Further, Appellant contends that the testimony shows that, if Elizabeth "was placed on probation for hindering his apprehension, then Appellant himself must have been attempting to evade apprehension – and therefore guilty of the charges." *See* TEX. R. EVID. 403. However, Appellant's trial counsel did not

lodge an objection to the prosecutor's follow-up question. Accordingly, Appellant's complaints on appeal were not preserved for appellate review. *See* TEX. R. APP. P. 33.1. We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court erred when it admitted the testimony of Chris Barrientes, Appellant's bail bondsman, "about the conditions of Appellant's bond, and the reasons why the bonding company went off Appellant's bond." Appellant argues that this testimony was not relevant to the issue of Appellant's guilt and that, even if it was relevant, its prejudicial effect outweighs its probative value. Appellant's trial counsel lodged a general relevancy objection to the initial question pertaining to the conditions of Appellant's bond. The prosecutor responded to this objection by asserting that the information was relevant to a trip to Cancun that Appellant raised in his cross-examination of M.A.K. The trial court overruled this objection.

The prosecutor then asked Barrientes about the details of the conditions of Appellant's bond. Appellant's trial counsel objected on the basis of hearsay to a response wherein Barrientes stated that Appellant told the bonding company that he did not have a passport. The trial court overruled this objection after the prosecutor stated that Appellant's statement constituted an admission of a party-opponent. The prosecutor then elicited testimony from Barrientes to the effect that Appellant did not state that he had any intentions of traveling out of the country, that the bonding company would not have permitted him to travel out of the country for leisure purposes, and that the bonding company ultimately went off his bond for a variety of reasons. Barrientes also testified during cross-examination by Appellant's trial counsel that "Marshals" had shown up at the bonding company seeking information about Appellant. The subsequent questioning occurred without objection from Appellant's trial counsel.

We disagree with Appellant's contention that Barrientes's testimony was not relevant to the issue of Appellant's guilt. As correctly noted by the State, Appellant raised the matter of the trip to Cancun during the cross-examination of M.A.K. when defense counsel questioned her about a trip to Cancun in 2011. Two photographs of Appellant and M.A.K. swimming together were introduced into evidence. Defense counsel attempted to show that M.A.K. and Appellant had a close relationship even after she made allegations to the authorities. Accordingly, Appellant "opened the door" to details pertaining to the trip. *See Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010) ("[A] party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted."). We conclude that the trial court did not abuse its discretion by overruling Appellant's relevancy objection to the details of Appellant's bond conditions regarding foreign travel.

With respect to Appellant's argument under Rule 403, this contention was not preserved for appellate review with a sufficient objection. A general relevance objection is insufficient to invoke a ruling from the trial court on whether the evidence is subject to exclusion on the ground of unfair prejudice under Rule 403. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991). Furthermore, most of Barrientes's testimony pertaining to the details of Appellant's bond was admitted without objection. Accordingly, we overrule Appellant's second issue.

Appellant's third issue challenges the admission of evidence that he refused to talk to Investigator Chris Fuentes about M.A.K.'s allegations or Detective Kay Therwhanger about extraneous offenses that he allegedly committed. Citing *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980), Appellant alleges that his pre-arrest silence cannot be used against him because he did not testify in this case.

Investigator Fuentes testified that he called Appellant on March 7, 2011, and asked him "if he would be willing to give me a statement of his own free will."

Appellant initially agreed to give a statement to Investigator Fuentes. However, Investigator Fuentes testified that Appellant subsequently informed him that he would not give "any statement without his lawyer being present and that he would contact me back at a later time." Investigator Fuentes did not speak with Appellant again.

Detective Therwhanger testified that she called Appellant to discuss extraneous offenses involving A.H., a ten-year-old girl who testified that Appellant had touched her in a similar fashion on several occasions. Detective Therwhanger simply testified that she attempted to contact Appellant and that he declined to speak with her.

There is no evidence in the record of the date that Appellant was arrested. However, Investigator Fuentes testified that his contact with Appellant occurred prior to Appellant's arrest. Furthermore, Appellant states in his brief that his silence was pre-arrest, pre-*Miranda*. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Court of Criminal Appeals and the Supreme Court of the United States have both held that pre-arrest, pre-*Miranda* silence is admissible evidence against a non-testifying defendant as substantive evidence of guilt. *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012), *aff'd*, *Salinas v. Texas*, 133 S. Ct. 2174, 2182–83 (2013). A defendant must expressly invoke his right against self-incrimination; mere silence is not enough. *Salinas*, 133 S. Ct. 2183–84. While Appellant refused to talk to either Investigator Fuentes or Detective Therwhanger, he did not expressly say he was doing so based on the Fifth Amendment. Appellant simply refused to speak to them. This was not enough to invoke his rights under the Fifth Amendment and *Miranda*. *Id.* at 2182–84; *Salinas*, 369 S.W.3d at 179. Thus, the trial court did not abuse its discretion when it admitted testimony concerning Appellant's pre-arrest, pre-*Miranda* silence. We overrule Appellant's third issue.

In his fourth issue, Appellant contends that his trial counsel rendered ineffective assistance of counsel during the guilt/innocence phase of trial in seven respects: (1) when he failed to invoke Rule 403, or request a balancing test, when the State offered evidence of Elizabeth's conviction for hindering Appellant's apprehension; (2) when he failed to invoke Rule 403, or request a balancing test, when the State offered the bail bondsman's testimony; (3) when he failed to object to the bondsman's nonresponsive testimony regarding marshals coming to the bonding office to look at Appellant's file and failed to request an instruction to disregard and a mistrial; (4) when he failed to make a relevance objection to the bail bondsman's testimony regarding the reasons why the bonding company went off Appellant's bond; (5) when he failed to make a relevance objection, invoke Rule 403, request a balancing test, or make a Fifth Amendment objection to Investigator Fuentes's testimony about Appellant's refusal to give a statement; (6) when he failed to make a relevance objection, invoke Rule 403, request a balancing test, or make a Fifth Amendment objection to Detective Therwhanger's testimony about Appellant's refusal to give a statement; and (7) when he failed to make an offer of proof after the trial court excluded certain evidence. Appellant specifically cites five pieces of evidence that were excluded by the trial court, including posts by the complainant and the complainant's brother on Facebook, an incident involving the complainant touching Appellant's buttocks with her foot, the testimony of Dr. Jarvis Wright, and a recorded phone call between Appellant and witness Albert Palmer.

To determine whether Appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003);

*Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In this case, the record is silent as to the reasoning behind trial counsel's actions and decisions.

The bulk of Appellant's claims of ineffective assistance of counsel are premised on trial counsel's failure to object on various grounds. When alleging ineffective assistance of counsel for failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection if trial counsel had made one. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Many of Appellant's claims are based on the lack of an objection under Rule 403. This rule provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless

presentation of cumulative evidence. *See Young v. State*, 283 S.W .3d 854, 874 (Tex. Crim. App. 2009). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the State's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

Appellant contends that the probative value of Elizabeth's testimony regarding her conviction for hindering Appellant's apprehension was outweighed by the danger of unfair prejudice. Appellant is essentially asserting that the trial court would have erred by overruling an objection under Rule 403 to this testimony. We disagree. Under Rule 403, it is presumed that the probative value of relevant evidence outweighs any danger of unfair prejudice. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). As noted previously, the State sought to offer evidence of Elizabeth's conviction for hindering Appellant's apprehension to show motive or bias on her part in favor of Appellant. The fact that the offense involved Appellant's apprehension for the charged offenses is not unduly prejudicial because evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn. *See Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989).

In his second claim of ineffective assistance of counsel, Appellant contends that his trial counsel should have objected to Barrientes's testimony under Rule 403. In his third claim, he contends that his trial counsel should have objected to the nonresponsive nature of Barrientes's response about marshals coming to look at Appellant's file. In his fourth claim, Appellant contends that his trial counsel should have objected to the relevancy of the reasons why the bonding company went off Appellant's bond. As with the case of Elizabeth's testimony, the testimony from

Barrientes that Appellant contends his trial counsel should have challenged relates to Appellant's possible flight from the authorities while the case was pending. As noted previously, evidence of flight is admissible as a circumstance of guilt. *Id.*; *see Cantrell v. State*, 731 S.W.2d 84, 93 (Tex. Crim. App. 1987) (evidence of bond forfeiture may be admissible as tending to show flight). We cannot conclude that the trial court would have erred in overruling the objections that Appellant contends his trial counsel should have made to Barrientes's testimony.

In his fifth and sixth claims of ineffective assistance of counsel, Appellant contends that his trial counsel provided ineffective assistance because he failed to object under Rule 403 during Investigator Fuentes's testimony about Appellant's refusal to give a statement and because he failed to make a relevance objection, a Rule 403 objection, or a Fifth Amendment objection during Detective Therwhanger's testimony that Appellant refused to give a statement. As discussed in issue three above, it was not error for the trial court to admit the testimony concerning Appellant's pre-arrest, pre-*Miranda* silence. *Salinas*, 133 S.Ct. at 2182–84; *Salinas*, 369 S.W.3d at 179. Accordingly, the record does not demonstrate that Appellant's trial counsel's actions were unreasonable.

In his seventh claim of ineffective assistance of counsel, Appellant argues that trial counsel failed to make an offer of proof for excluded evidence, including Facebook postings by M.A.K. and M.A.K.'s brother, an incident between M.A.K. and Appellant where M.A.K. touched Appellant with her foot, the testimony of Dr. Wright, and a recorded phone call between Appellant and Palmer while Appellant was in jail.

During cross-examination of M.A.K., defense counsel attempted to question her about a Facebook post she made. The State objected on the basis of hearsay, and the trial court overruled the objection. M.A.K. then answered the question. Because no evidence was excluded, no offer of proof was necessary. Thus, Appellant has not

11

shown that trial counsel's actions were deficient in this regard. During cross-examination of M.A.K.'s brother, defense counsel questioned him about a Facebook post. The State objected on the basis of hearsay, and the trial court sustained the objection. The record is silent as to why defense counsel wanted the testimony concerning the Facebook post before the jury. Accordingly, Appellant's argument does not satisfy the second prong of *Strickland* because the record does not indicate how that testimony would have influenced the outcome. *Strickland*, 466 U.S. at 691. Ineffective assistance of counsel claims "must be firmly founded in the record." *Thompson*, 9 S.W.3d at 813.

Defense counsel attempted to cross-examine M.A.K. about an alleged incident where M.A.K. touched Appellant with her foot. The trial court excluded evidence of this specific act of physical conduct. The record does not demonstrate why defense counsel did not make an offer of proof, what the exact testimony would have been, and if that testimony would benefit Appellant. Thus, this claim is also not firmly founded in the record. *Id.* Appellant has failed to show that the excluded testimony would have had any effect on the outcome. *Strickland*, 466 U.S. at 691.

Dr. Wright, a psychologist, was called by the defense to discuss the home environment and the relationship between Appellant, his family, and M.A.K.'s family. The State conducted a voir dire examination of Dr. Wright outside the presence of the jury to determine the relevancy of his testimony. After extensive questioning by both the State and defense counsel during the voir dire examination, the trial court excluded Dr. Wright's testimony because "there's been no showing that this will assist the trier of fact in understanding the evidence or determine a fact in issue." All of Dr. Wright's testimony during the voir dire examination was included in the record. Thus, defense counsel essentially made an offer of proof of Dr. Wright's excluded testimony. Accordingly, Appellant has failed to demonstrate that his trial counsel was ineffective in this regard.

Finally, defense counsel attempted to introduce a recorded phone call between Appellant and Palmer during Palmer's redirect examination. The phone call involved the same alleged incident between Appellant and M.A.K. as noted above pertaining to M.A.K. allegedly touching Appellant's buttocks with her foot. The record is silent as to why the excluded evidence would be beneficial to Appellant or why trial counsel did not make an offer of proof. Thus, Appellant has not overcome the presumption that trial counsel's actions were reasonable. *Id.* at 690. We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

June 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.